■ In the Matter of ASSOCIATION OF SURROGATE'S AND SUPREME COURT REPORTERS WITHIN THE CITY OF NEW YORK, by LESTER P. KANE, its President, on Behalf of the Members of the Association of Surrogate's and Supreme Court Reporters Within the City of New York and All Others Similarly Situated, et al., Appellants, v CITY OF NEW YORK et al., Respondents.—Appeal, transferred from the Appellate Division of the Supreme Court in the First Judicial Department, from a judgment of the Supreme Court at Special Term, entered October 8, 1976 in New York County, which dismissed petitioners' application in a proceeding pursuant to CPLR article 78. It is undisputed that the respondents, as the administrators of the courts within the City of New York, dismissed those petitioners who were provisional court reporters and reassigned the petitioners who are permanent court reporters in order to reduce the cost of court services for the City of New York in view of its now famous "Fiscal Crisis" (see, e.g., *Matter of Blyn v Bartlett,* 50 AD2d 442, affd 39 NY2d 349). Payroll savings to the city were realized by transferring three of the permanent employees from city-funded positions in Queens County to State-funded positions in Kings County. Savings were further realized by terminating four provisional employees and rehiring them on a per diem basis, because as per diems they would not receive fringe benefits. The petitioner Nichiarico, a permanent employee, was reassigned from the Civil Term of Supreme Court for the First Judicial District to the Criminal Term of that court. A per diem reporter was then hired to fill the opening in the Civil Term. Any suggestion that the reassignment of the permanent employees from Queens County to Kings County was arbitrary and capricious is without merit. The respondents have the power to reassign employees in the Unified Court System in the City of New York (22 NYCRR 25.33 [e]). Faced with the budgetary requirements of the City of New York there was a sound basis for the change in assignment and such action was a rational means for meeting the continuing requirements of the unified court system for reporters. The transfer of the petitioner, Nichiarico, from a Civil Term to a Criminal Term does not suggest any necessity of justification, but if needed, it was necessary because three provisional reporters from that Criminal Term had just been terminated. The power of the respondents to terminate provisional employees at any

time is well established *(Koso v Greene,* 260 NY 491; cf. *Matter of Cohen v Department of Mental Hygiene of State of N. Y.,* 48 AD2d 697). Furthermore, the fact that an eligible list for permanent court reporters had been prepared indicates that the provisional appointments to such positions would have terminated by virtue of the promulgation of such a list as required by Administrative Board rules (22 NYCRR 25.26 [c]). As Special Term recognized, the troublesome feature of this case is that the use of per diem court reporters poses a threat to the integrity of the civil service system. It is quite apparent from section 160 of the Judiciary Law that it was contemplated that for budgetary or other reasons an official stenographer might not actually be in attendance at a Trial Term of the Supreme Court. Under such circumstances, that statute gives the court the independent power to appoint a reporter on a per diem basis and charge the cost against the *county* in which the term was held. Under the prior method of funding of the Supreme Court various costs of the court were at the fiscal mercy of the counties and section 160 expressly permits a Justice in charge of a term of Supreme Court to appoint a stenographer where necessary. The budget problems of the City of New York required the use of per diem appointees in Supreme Court because the city could not provide official stenographers. The same conclusion is reached as to criminal cases pursuant to section 164 of the Judiciary Law *as long as such per diem reporters are only to assist the regularly assigned stenographer.* The present case discloses that per diem reporters have been retained on a regular basis for long periods of time; however, it does not appear that this was a situation within the fiscal control of the respondents and, accordingly, there would be no basis for finding that they had violated any public policy as to civil service either by and through subdivision 1 of section 212 of the Judiciary Law or as expressed in section 6 of article V of the State Constitution. The per diem appointments are not temporary appointments to any office, but instead are daily contracts of an indefinite period necessary for the functioning of the courts. The petitioners' reliance upon the case of *Matter of O'Reilly v Grumet* (308 NY 351) is misplaced because unlike the appointing authority in *Grumet,* the respondents here are expressly authorized to hire per diem reporters by sections 160 and 164 of the Judiciary Law. For the foregoing reasons we conclude that Special Term correctly found that the petitioners had failed to establish any right to relief in the present proceedings. Judgment affirmed, without costs. Greenblott, J. P., Kane, Mahoney, Main and Herlihy, JJ., concur.