OPINION OF THE COURT
James Gibson, J.
This article 78 proceeding poses issues: (1) as to the validity —constitutionally and generally — of rule 25.44 of the Rules of the Administrative Board of the Judicial Conference (22 NYCRR 25.44, eff Sept. 1, 1977) closely restricting the right of law secretaries to Supreme Court Justices to engage in the private practice of law; and (2) as to the effect of the rule, if valid, upon the rights of an incumbent — the petitioner — who held office under the prior, less constraining rule 839.4 of the Appellate Division, Third Department (22 NYCRR 839.4) until it was superseded by Administrative Board rule 25.44 here challenged.
*264 The prior Third Department rule (22 NYCRR 839.4), so far as material to this proceeding, provided as follows:
"839.4 Practice of law by law secretaries to justices of the Supreme Court.
"(a) Full time law secretary to a justice of the Supreme Court.
"(1) A full time law secretary to a justice of the Supreme Court in this department shall not participate, directly or indirectly, as attorney or counsel in any action or proceeding, pending before any court or any administrative board, agency, committee or commission of any government, or in the preparation or subscription of briefs, papers, or documents pertaining thereto;
"(2) Subject to the approval of the Appellate Division by general rule, or by special permission, such full time law secretary may participate as attorney or counsel in uncontested matters in the Surrogate’s Court, uncontested accountings in the Supreme Court, and other ex parte applications not preliminary or incidental to litigated or contested matters”.
The superseding Administrative Board rule now in effect (22 NYCRR 25.44) provides, in pertinent part, as follows:
"25.44 Practice of law. (a) A lawyer who is employed full time in any court or agency of the unified court system shall not maintain an office for the private practice of law alone or with others, hold himself out to be in the private practice of law, or engage in the private practice of law except as provided in subdivision (b) of this section.
"(b) Subject to the prior approval of the presiding justice of the appellate division of the Judicial Department in which he is employed as to each professional engagement, a person referred to in subdivision (a) of this section may engage in the private practice of law as to matters not pending before a court or a governmental agency, in uncontested matters in the Surrogate’s Court, uncontested accountings in the Supreme Court and other ex parte applications not preliminary or incidental to litigated or contested matters. Such approval shall continue only to the completion of the particular engagement for which permission was obtained.”
Thus, the new rule differs from its predecessor in that: (1) the rule applies to all full-time court employees, regardless of *265 their position; (2) no full-time court employee can maintain a private law office or hold himself out to be in private practice of law; and (3) the rule continues the existing exceptions for the kinds of ex parte matters permitted to be undertaken, but requires prior approval by the Appellate Division on an individual case-by-case basis.
In derogation of these inhibitory regulations, petitioner seeks judgment requiring the Administrative Board to nullify rule 25.44 insofar as it applies to him; determining that he is entitled to continue both his private law practice and his service as a full-time law secretary; and declaring that rule 25.44 is inapplicable to him or that he is entitled to an exemption therefrom by reason of his incumbency in office at and prior to the time of its adoption.[1]
In support of the demand for judgment, the petition alleges that in adopting the rule, the board "acted without or in excess of its jurisdiction in preventing the petitioner from the conduct of the private practice of his profession of law to his extreme prejudice and professional and financial loss”; that the rule does not relate to the administrative powers and duties conferred upon the board by section 212 of the Judiciary Law with respect to the various factors enumerated in subdivision 1 of that section, including, among many others, "[personnel practices”, "job definition” and "qualifications”; but "relates solely to outside activities”; that the rule was not "negotiated” by collective bargaining "consistent with the civil service law” (Judiciary Law, § 212, subd 1; Civil Service Law, § 203; that the rule is "arbitrary and capricious” as violative of the United States Constitution and that of the State of New York in that, among other things, it deprives petitioner of property without due process of law; violates his various Fourteenth Amendment rights; and, as to him, is unconstitutionally discriminatory; that the board adopted the rule with knowledge of its economic impact upon petitioner despite his lengthy tenure of office and reliance upon the then existent rules of the court; that the board is "estopped from altering [petitioner’s] substantial rights”; that the acts of respondent are "beyond his jurisdiction” as they infringe upon petitioner’s *266 right to practice law and deprive him of his earnings therefrom "without due process of law”.[2]
This many-pronged attack along a broad front, was narrowed upon oral argument and in the briefs. Thus petitioner, in his brief, limits his discussion to his contentions: (1) that the board lacked the power and authority to promulgate rule 25.44 and, in particular, was without constitutional or statutory authority to thereby "regulate the private practice of the profession of law”; (2) that in adopting the rule, the board acted arbitrarily and capriciously and in violation of petitioner’s constitutional rights to due process and equal protection; and (3) that respondent should be estopped from applying the rule to petitioner, who, by reason of his reliance upon prior administrative measures, should have a "grandfather” exemption from such application.
The basics of the case having been outlined at this length, the legal issues must now be addressed.
The board’s power, as here challenged, flows from section 212 of the Judiciary Law which, in turn, rests upon section 30 of article VI of the New York Constitution, constituting the fundamental grant of legislative power to regulate the court system and providing that the Legislature may, "on such terms as it shall provide and subject to subsequent modification, delegate, in whole or in part, to a court, including the appellate division of the supreme court, to the administrative board of the judicial conference, or to the judicial conference, any power possessed by the legislature to regulate practice and procedure in the courts.”
Section 212 confers upon the board broad authority to adopt, for general application throughout the State, "effective standards and policies” relating to many enumerated administrative powers and duties, including, but not limited to: "Personnel practices, title structure, job definition, classification, qualifications, appointments, promotions, transfers, leaves of absence, resignations and reinstatements, performance rating, sick leaves, vacations, time allowances and removal of nonjudicial personnel of the unified court system.”
Contending that the rule was adopted without authority and citing subdivision 1 of section 212 of the Judiciary Law, *267 petitioner argues that: "One looks in vain for any intimation, much less direct reference, to the power of the Administrative Board to regulate the private practice of the profession of law.” The argument does not focus upon the true issue here tendered, which is the right of the board to regulate, not the practice of law, but, rather, employment within the judicial system — this by establishing "standards and policies” affecting nonjudicial personnel as respects "personnel practices”, usually to be effectuated by provisions for "qualifications” or by "job definition” or by both (Judiciary Law, § 212, subd 1). The rule does not, in any of its aspects, assume to regulate law practice, nor is such the result. It requires, in effect, that law secretaries to Justices shall be lawyers not engaged in private practice. In light of the policy involved, the difference extends far beyond the semantic.
These policy considerations underlying the rule are, indeed, of great moment. They are outlined in detail in the comprehensive affidavit filed by respondent in opposition to the application. To the extent that the matters there stated are factual, they are proper subjects of judicial notice and are accepted and confirmed by this court. Salient among the facts which influenced the step-by-step evolution of the present rule was the conflict of interest — actual and apparent — between the public employment and the private practice. Inevitably, the exigencies of the private practice and the convenience of private clients required communication and sometimes actual representation, with concomitant distraction, during the regular hours (including the normal hours of court sessions) required to be devoted to the employment; and occasionally the incidental use of official library, telephone and other facilities to accommodate the temporal and other necessities of the private practice. Many of the permitted activities (e.g., title closings; uncontested judicial accountings) would normally have to be conducted during customary daytime business hours. In short, the conflict was inevitable and, indeed, inherent.
An equally important factor was the appearance of impropriety arising from the relationship. The respondent’s brief, citing his affidavit in opposition, states the obvious and well-recognized facts:' "Regardless of the intent of the court employee who practices law, the general public tends to believe that an attorney who works for the courts has special influence within the legal system. As a result, this public knowl *268 edge serves both to attract clients and to give the appearance to adverse parties that they will not receive an impartial hearing.” Again drawing upon the affidavit, the brief convincingly states another intangible but completely realistic factor: "A client goes to an attorney precisely because he wants his documents drawn so that they will withstand any legal challenge in court. The public knowledge that the draftsman is a court employee, particularly one close to a judge or in a high administrative position, serves to attract clients who believe that, in the event of legal challenge, the legal effect of the document will have an added strength because of the perceived influence of the court employee”. The cardinal rule interdicting the appearance, no less than the reality, of judicial impropriety (Code of Judicial Conduct, canon 2, subd B) applies with equal force to the conduct and activities of those individuals, such as law secretaries, whose close and confidential relation to the Justices is manifest to all.
Accordingly, the contention that the rule is invalid as unlawfully regulating private law practice must be rejected.
The second contention advanced by petitioner in his brief is that the adoption of rule 25.44 was the result of arbitrary and capricious action by the board and violated petitioner’s constitutional rights to due process and to equal protection. The argument proceeds, in part, upon the theory— hereinbefore rejected — that the rule does not deal with administration "but with the direct regulation of the private practice of law”. It is then contended, with appropriate citations, that the right to continue in a business and the right to follow a chosen profession are constitutionally protected and, in particular, that: "A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment” (Schware v Board of Bar Examiners, 353 US 232, 238-239); and, finally, that "the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained” (Nebbia v People, 291 US 502, 525).
Important as it is, the right to practice law is, in the context of this case, the subsidiary issue. Thus, broadly speaking, and that in terms of petitioner’s constitutional approach, petitioner may have a constitutional right to conduct a private *269 law practice; he does not have a constitutional right to be or continue to be a law secretary under any and all circumstances. And so the "property right” asserted by petitioner as the basis o.f his claim of deprivation without due process is not the right to practice law but the right, if such it be, to hold his present position.
Adhering to the conclusion (supra) that the rule does not regulate the practice of law, consideration can be given only to so much of petitioner’s contention as asserts that the board’s "arbitrary and capricious” action in adopting the rule in itself violated his constitutional rights to due process and equal protection. Although the argument will be explored in the constitutional setting in which petitioner has placed it, a finding of arbitrary and capricious action would ordinarily invalidate the rule, whether or not the case be one of constitutional dimension.
The issue of arbitrariness in respect of the promulgation of an administrative regulation has recently been restated as follows: "The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation 'is so lacking in reason for its promulgation that it is essentially arbitrary.’ (Matter of Marburg v Cole, 286 NY 202, 212.) The interpretation given a statute by the administering agency 'if not irrational or unreasonable, should be upheld.’ (Matter of Howard v Wyman, 28 NY2d 434, 438.) As was observed in Mississippi Val. Barge Co. v United States (292 US 282, 286-287), '[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.’ ” (Ostrer v Shenck, 41 NY2d 782, 786.)
Respondent cites a number of cases which have affirmed administrative rules prohibiting or restricting "outside” employment and "moonlighting”.[3] All are apposite, but in this case we need look, for validation, only to the convincing — and largely unchallenged — factual presentation of the reasons prompting the rule, as hereinbefore outlined. That there exists *270 a completely rational basis for the rule seems too clear to require additional discussion.
The third and final contention advanced in petitioner’s brief is that the Administrative Board was and is estopped from applying rule 25.44 to the petitioner, who, by reason of his reliance upon previous administrative measures, should have a "grandfather” exemption from such application.
The reliance asserted was upon rule 839.4 of the Rules of the Appellate Division, Third Department; but that rule was not immutable, of course; and when the promulgation of the superseding Administrative Board rule was proposed, the board — although it was not obliged to — could and did give consideration to the adoption of a grandfather clause. No basis appears for finding other than rational and reasonable the conclusion that the immediacy of the problem required not only immediate application of the curative rule but application as against all incumbents, without exception.
The challenge to the provision giving immediate effect to the rule is not aided by petitioner’s claim of estoppel. It is doubtful that he has met the requirements for the application of that doctrine, but it is clear, in any event, that — as was held in a proceeding against respondent’s predecessor — "estoppel does not lie against the State, a municipality or their agencies where * * * the governmental body was exercising its statutory or regulatory authority” (Matter of Gavigan v McCoy, 37 NY2d 548, 552).
The remaining grounds for annulment as set forth in the petition, although not urged in petitioner’s brief, have been examined and found untenable; and none of them is such as to require discussion.
Petition dismissed, without costs.

. Prior to the effective date of the rule, petitioner applied, without success, for exemption from its prospective application, stating that although he did "not quarrel with the admirable goals of the proposed rule”, it would, by reason of certain enumerated economic factors, cause him "extreme hardship” and that he accordingly requested "a grandfather-clause-type exemption or special exemption”.

. It has been stipulated by petitioner that an allegation "that the determination made as a result of the hearings is not supported by substantial evidence” (cf. CPLR 7804, subd [g]) is not to be construed so as to require or permit transfer of the proceeding to the Appellate Division.

. E.g., Matter of Calfapietra v Walsh (183 Misc 6, affd 269 App Div 734, affd 294 NY 867); Flood v Kennedy (26 Misc 2d 172, affd 16 AD2d 768, affd 12 NY2d 345); Matter of Masi v Kirwan (60 Misc 2d 103); Evans v Carey (40 NY2d 1008, affg 53 AD2d 109); Youker v Gulley (536 F2d 184). In Youker, the court found "a rational connection” between a rule restricting court reporters’ private stenographic work and the government’s interest of work control and avoidance of the appearance of impropriety and thus the case is precisely on point here.