OPINION OF THE COURT
Harold J. Hughes, J.
Respondents seek to dismiss this proceeding upon objections in point of law that: (1) the court lacks jurisdiction to entertain this proceeding or grant the relief sought; (2) respondents Cooke, Mahoney, Harvey and Regan are not proper parties to the proceeding; (3) the proceeding is improperly commenced as a class action; and (4) the petition fails to state facts sufficient to entitle petitioner to the relief sought.
Petitioner George W. Marthen is the Hamilton County Court Judge and Surrogate, helving been elected to that office in 1971 by the people of Hamilton County. Respondent Lawrence H. Cooke is Chief Judge of the Court of Appeals, and respondent Herbert B. Evans is Chief Administrative Judge of the courts by appointment of Chief Judge Cooke. Respondents A. Franklin Mahoney and Nprman L. Harvey are, respectively, the Presiding Justice, Appellate Division, Third Judicial Department, and the Administrative Judge of the Fourth Judicial District. Respondent Edward V. Regan is the Comptroller of the State of New York.
This CPLR article 78 proceeding attacks a determination by respondent Evans assigning petitioner to sit as a County Court Judge in Westchester and Suffolk Counties for six months in 1980 at a salary approximately $9,000 less than that paid to Westchester and Suffolk County Court Judges performing the same duties as petitioner. Petitioner attacks the assignments on the further grounds that they deprive the people of Hamilton County of their elected Judge for almost half a year.
The petition and supporting papers disclose that in his eight years on the Bench prior to t]le Judge transfer plan, Judge Marthen, on a voluntary basis, served 312 days on assignment to courts outside of his home county, traveling over 38,000 miles at a personal expense exceeding $4,000. Pursuant to Chief Judge Cooke’s judicial transfer plan, respondent Evans assigned petitioner to terms oij County Court in Westchester County commencing on January 2, 1980, February 25, 1980, *555 May 19, 1980 and September 8, 1980; and to terms of County Court in Suffolk County commencing July 14, 1980 and November 3, 1980. Petitioner’s salary is $45,496, while the salary of a County Court Judge in Westchester is $54,441 and in Suffolk $54,131. The petition alleges that respondent Evans acknowledges that the salary disparities are "neither necessary, desirable or equitable”. Broadly construed, the petition alleges that the determination of respondent Evans requiring petitioner to perform the work of the Westchester and Suffolk County Judges at a less than equal rate of compensation is arbitrary and capricious.
Concerning respondents’ objections to the petition, many can be quickly disposed of. The court agrees that respondents Cooke, Mahoney and Harvey have been improperly joined as parties and the proceeding shall be dismissed as to them pursuant to CPLR 1026. Moreover, a claim for money damages against the State must be pursued in the Court of Claims (Matter of Dubner v Ambach, 74 AD2d 949; Automated Ticket Systems v Quinn, 70 AD2d 726). Consequently, this court lacks jurisdiction to render the relief sought against respondent Regan and shall dismiss the proceeding against him.
The objection to class action status presents a closer question. The argument raised by petitioner that the assignment unfairly deprives the people of Hamilton County of their elected Judge for almost half a year would be amenable to class action treatment, but the class would be the citizens of Hamilton County, and petitioner, as the center of the dispute between the people of Hamilton County and the Office of Court Administration, would not be a proper representative of the class. The court is of the opinion that the question of whether the transfers are arbitrary and capricious with respect to the Judges involved must be determined on a case-by-case basis based on the individual Judge’s circumstances, with any common questions of law to be governed by the principle of stare decisis (Matter of Froehlich v Toia, 71 AD2d 824).
Irrespective of an administrator’s viewpoint, all Judges are not identical and interchangeable. If such were true, there would be no need for a careful selection process to choose our Court of Appeals Judges (NY Const, art VI, § 2) and appellate level Justices (NY Const, art VI, § 4), as any Judge would suffice. The position of Judge is one of the most important in our governmental system (Matter of Marro v Bartlett, 46 NY2d 674, 682). With respect to those Judges who deal on a *556 direct basis with the people, siich as County Court Judge and Surrogate, the State Constitution has made the choice thereof by election of the citizens affected (NY Const, art VI, §§ 10, 12). As a result, an up-State county like Albany County may elect County Court Judges with views on crime much different than those of Judges selected by the citizens of New York City. The determination of aln administrator to alter local choice on other than a temporary basis in response to an urgent need (NY Const, art VI, § 26) is most serious business. Such determinations must be made upon an individual basis taking into account many considerations and the review thereof must likewise be upon class, basis. Class action status an individual, as opposed to a should be denied (CPLR 902).
That brings us to the most important issue raised by respondents on their motion, to wit: "the Court does not have jurisdiction to entertain thisj proceeding”. The position of respondents raises the critical issues of: (1) what, if any, is the remedy of an elected Judge seeking relief from an administrative determination of the Chief Administrative Judge; (2) what is the standard of review; and (3) what forum has jurisdiction to determine the grievance.
The first question is whether there be any remedy. That turns, in part, upon the importance to society to affording redress. Judge Fuchsberg spoke to this point in his dissenting opinion in Matter of Marro v Bartlett (supra, p 685), expressing the overriding concern of "the imperative for an independent judiciary”. Courts are the protection against a government overstepping its bounds (Rapp v Carey, 44 NY2d 157). The concept that "There is no cause to fear executive tyranny so long as the laws are being faithfully executed” (Rapp v Carey, supra, p 175 [dissent per Judge Cooke]) has proven to be true only so long as an ever vigilant and independent judiciary is present to restrain executive and administrative excess (Matter of County of Oneida v Berle, 49 NY2d 515). The independent spirit of elected Judges would be seriously undermined if they were subject to unreviewable administrative determinations of the Office of (jüourt Administration.
The Chief Administrative Judge is no stranger to our courts (Matter of Marro v Bartlett, 46 NY2d 674, supra; Matter of Blyn v Bartlett, 39 NY2d 349; Matter of Evans v Newman, 71 AD2d 240, lv to opp granted; 48 NY2d 612, apps dsmd 48 NY2d 1026; Matter of Goldstein v Bartlett, 92 Misc 2d 262, affd 64 AD2d 956, lv to opp den 46 NY2d 705). If the Judges *557 determining such cases are subject to unilateral and unreviewable transfer by one of the litigants, it not only gives the appearance of impropriety but would have a chilling effect upon the independence of the Judge. In theory, a Judge in Albany rendering a decison unfavorable to the Chief Administrative Judge could be assigned by the Chief Administrative Judge to a "temporary assignment” to Plattsburgh, Buffalo or Long Island for the remainder of his term of office (Matter of Taylor v Sise, 33 NY2d 357, 364) and this determination would stand if no court review were available. The judiciary cannot stand as a bulwark against bureaucratic excess if it is itself ruled by a bureaucracy.
Chief Judge Cooke eloquently expressed the need for judicial review of unbridled administrative power in Matter of Nicholas v Kahn (47 NY2d 24, 33) when he stated: "The safeguard against arbitrary administrative action lies in the promulgation of adequate standards * * * to insure meaningful judicial review * * * Protection of the individual * * * against the exercise of arbitrary administrative power demands both procedural safeguards within the agency and outside checks upon the exercise of untrammeled administrative discretion (see CPLR 7803, subd 3).”
The argument that respondent Evans is only acting pursuant to delegated administrative discretion and the exercise of that discretionary policy-making authority is not reviewable is unacceptable to the court. "The exercise of a discretionary policy-making authority by an administrative officer is an administrative determination subject to judicial annulment only if found to be arbitrary and capricious” (Matter of Guile v State Univ. of N. Y., 49 AD2d 1022, 1022-1023). In Matter of Nathanson v Adams (207 Misc 572, 576-577, revd 1 AD2d 823) the court succinctly stated the rule to be: "Arbitrary action cannot elude judicial reach by the plea that it was no more than the use of proper administrative discretion. The moment it is shown to be arbitrary, it ceases to be discretionary”.
This court holds that an elected Judge finding himself aggrieved by a determination of the Chief Administrative Judge or the Office of Court Administration has a right to judicial review of that determination. The method of review of a determination of the Chief Administrative Judge made pursuant to the authority delegated to him under the State Constitution is by way of CPLR article 78 (Matter of Marro v Bartlett, 46 NY2d 674, supra; Matter of Blyn v Bartlett, 39 *558 NY2d 349, supra; Matter of Goldstein v Bartlett, 92 Misc 2d 262, affd 64 AD2d 956, lv to opp den 46 NY2d 705, supra). This includes determinations concerning the transfer of court personnel (Matter of Association of Surrogate’s & Supreme Ct. Reporters v City of New York, 57 AD2d 647, opp dsmd 42 NY2d 1094). The standard of review is the arbitrary and capricious test of CPLR 7803 (subd 3) (Matter of Nicholas v Kahn, 47 NY2d 24, 33, supra; Matter of Goldstein v Bartlett, 92 Misc 2d 262, 269, supra). "The arbitrary or capricious test chiefly 'relates to whether a particular action should have been taken or is justified * * * and whether the administrative action is without foundation in fact’ ” (Matter of Pell v Board of Educ., 34 NY2d 222, 231). The forum for an article 78 proceeding is Supreme Court (CPLR 7804, subd [b]).
The last point raised to dismiss the petition is that it fails to allege facts sufficient to entitle petitioner to any relief. Upon a motion to dismiss on objections in point of law prior to the service of an answer, the court does not address itself to the truth of the allegations, or the facts as they actually are but, rather, the facts as petitioner alleges them (Hondzinski v County of Erie, 64 AD2d 864). An exhibit attached to the petition "is a part thereof for jail purposes” (CPLR 3014). All of the allegations of the petition are deemed to be true and are broadly construed so that if they disclose any viable claim, irrespective of labels and inartistic draftsmanship, the litigation must be allowed to proceed (Matter of Board of Educ. v Allen, 32 AD2d 985). The fact that improper relief is sought is of no moment since the court can fashion a remedy awarding the appropriate relief (Matter of New York Post Corp. v Leibowitz, 2 NY2d 677, 683).
Broadly construed, the petition alleges that respondent Evans assigned petitioner to sit as a County Court Judge in Westchester and Suffolk Counties for six months of 1980 at a salary $9,000 less than that paid to Westchester and Suffolk County Court Judges performing the same duties. It is alleged that this determination deprived the people of Hamilton County of their elected Judge for six months, and at the same time subjected petitioner to a half-year deprivation of family and community. The petition alleges that respondent Evans made the assignment while acknowledging that the salary disparities were "neither necessary, desirable or equitable”.
At the very least, the petition charges respondent Evans with making an administrative determination resulting in *559 County Court Judges "performing the same functions and carrying the same responsibilities [while] receiving different compensation”, an administrative practice condemned long ago by our courts as "repugnant to sound principles of judicial administration” (Matter of Benvenga v La Guardia, 182 Misc 507, 511, affd 268 App Div 566, affd 294 NY 526). In addition, the conduct complained of has been held to constitute the denial of petitioner’s constitutional right to equal protection of the law (Weissman v Evans, NYLJ, June 2, 1980, p 16, cols 4, 5). The court holds that the foregoing allegations of arbitrary and capricious conduct on the part of respondent Evans are sufficient to withstand the motion to dismiss.
The motion to dismiss upon objections in point of law shall be granted to the extent of: dismissing the proceeding as against respondents Cooke, Mahoney, Harvey and Regan; dismissing all requests for monetary relief; denying class action status; and shall in all other respects be denied, without costs. Respondent Evans is directed to serve his answer within the time prescribed by CPLR 7804 (subd [f]).