*108 OPINION OF THE COURT
Harold J. Hughes, J.
The issue for determination is whether the Unified Court Budget Act, as enacted by chapter 966 of the Laws of 1976, chapter 55 of the Laws of 1979, and chapter 881 of the Laws of 1980, violates the equal protection clauses of the Federal and State Constitutions by providing plaintiffs lower salaries than granted to other Judges of the same courts performing identical duties.
There are three separate actions brought by 109 named plaintiffs who hold, or held, the positions of Family, County and/or Surrogate Court Judge in various counties throughout the State except Nassau County with respect to Family and County Court Judges; and Nassau, Suffolk, Westchester and the counties of the City of New York with respect to Surrogate Court Judges. Plaintiffs seek summary judgment upon their request for injunctive relief and a declaration that the actions of the defendants in, at all times after April 1, 1977, paying them less than the compensation paid to Family, County and Surrogate Court Judges in other counties are unconstitutional and that they are entitled to receive retroactive salary payments from April 1, 1977 to the present.
Plaintiffs’ position is that the powers and duties of all Judges of the Family, County and Surrogate Courts are the same under the State Constitution (NY Const, art VI, §§11, 12, 13), and the salary classifications contained in section 221-d of the Judiciary Law calling for Judges in somq counties to be paid more than Judges in other counties are without any rational basis and wholly irrelevant to the achievement of a valid State objective. For instance, as of October, 1980 the Surrogate of Onondaga County received $10,000 less in salary than the Surrogate of Richmond County despite the fact that Onondaga is the more populous county with a greater case load per Judge.
The compensation of Family, County and Surrogate Court Judges is set by the Legislature (NY Const, art VI, § 25). Pursuant to the will of the people, the State Constitution was amended, effective September 1, 1962, to require a unified court system for the State with the Surrogate, *109 Family and County Courts being designated as State-wide courts (NY Const, art VI, § 1). The unification of the system has proceeded apace to the point that pursuant to Chief Judge Cooke’s judicial transfer program, Judges of the County, Family and Surrogate Courts are routinely transferred for six months of the year, or more, from their home counties to other counties to perform judicial duties (Matter of Marthen v Evans, 104 Misc 2d 553).
Prior to the enactment of the Unified Court Budget Act (L 1976, ch 966) the Legislature prescribed minimum base salaries for Judges of these county-level courts and permitted local governments to increase the base salaries by supplements (see, e.g., L 1962, chs 686, 699; L 1963, ch 717). Responsibility for paying the compensation was that of local government with some State subsidies (see former Judiciary Law, § 34-a). By chapter 993 of the Laws of 1969 there was created a temporary State commission to review compensation received by members of the Legislature and the judiciary, which eventually became a permanent commission (L 1972, ch 875). Both commissions reported to the Legislature that: “It was the view of the Temporary Commission and is the view of this Commission, that steps toward a unified state court system are desirable and that differential treatment within a given court level may be an obstacle to such unification” (Report of the Compensation of New York State Legislators and Judges, April 30, 1972, State Commission on Legislative and Judicial Salaries, p 30).
The disparity in compensation for Judges of the same courts was the result of decisions by local governments on whether, and by how much, to supplement the minimum base salaries.
The system was changed by the Unified Court Budget Act which provided that, commencing April 1, 1977, salaries of Family, County and Surrogate Court Judges would be placed on the State payroll and judicial personnel henceforth would be State employees (L 1976, ch 966, § 2, adding Judiciary Law, former § 220, subd 6, renum § 39, subd 6). The differences in pay attributable to local government discretion and funding were continued (supra) and the disparity increased by subsequent legislation (L 1979, *110 ch 55; L 1980, ch 881). These actions seek to end this disparity.
The defenses are: (1) no claims are stated against defendants Evans or Regan and they are not proper parties to the actions; (2) the court lacks jurisdiction of what are, in effect, actions for money damages against the State; (3) there is no constitutional right to equal compensation for members of the judiciary; and (4) the complaint fails to state a cause of action in that the facts alleged are insufficient to overcome the presumption of constitutionality of the judicial salary plan enacted by the Legislature. Additionally, the Attorney-General argues that summary judgment is not warranted due to the failure of plaintiffs to establish the allegations of their complaints by the submission of facts in evidentiary form.
Addressing defendants’ procedural objections, this court agrees that it lacks jurisdiction of a claim for money damages against the State (Matter of Dubner v Ambach, 74 AD2d 949, mot for lv to app den 50 NY2d 803). The State is a proper party to an action to declare a statute unconstitutional as denying equal protection (Wegman’s Food Markets v State of New York, 76 AD2d 95). The claim against the Comptroller should be dismissed (Matter of Marthen v Evans, 104 Misc 2d 553, 555, supra). However, the Chief Administrator of the Courts is an appropriate party to an action by Judges to declare a legislative classification to be in violation of the equal protection clause (read Matter of Mager v Bartlett, 69 AD2d 517, 519, mot for lv to app den 48 NY2d 607, in conjunction with Zimmerman v Murray, 50 AD2d 668, affd 41 NY2d 1074).
While sitting as a Supreme Court Justice, Chief Judge Cooke held that a declaratory judgment action was the proper vehicle to test the constitutionality of a legislative act, and that upon an appropriate record summary judgment is in order (Shilbury v Board of Supervisors of County of Sullivan, 46 Misc 2d 837, affd 25 AD2d 688). Moreover, when there is a proven claim that salary differentials violate the equal protection clause, the declaratory judgment thereon may declare that the plaintiffs are entitled to receive retroactive payments to correct the injustice (Matter of Abrams v Bronstein, 33 NY2d 488). The com *111 plaints here state viable claims for declaratory relief. Of course, the recovery of any money damages pursuant to rights declared here will have to be by way of a separate action in the Court of Claims (Matter of Adams v New York State Civ. Serv. Comm., 51 AD2d 668). Turning to the merits, the applicable rules of law are set forth by the Court of Appeals in Matter of Abrams v Bronstein (supra, pp 492-493) as follows: “the State denies equal protection when it treats persons similarly situated differently under the law *** Controversies involving compensation are *** subject to review under the guarantees of equal protection *** Of course, not every difference in treatment violates the equal protection guarantee. As formulated in a recent Supreme Court decision, the traditional test for a denial of equal protection under State law is ‘whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective’ *** To apply this test we must, as an initial step, ascertain both the basis of the classification involved and the governmental objective purportedly advanced by the classification. The classification must then be compared to the objective to determine whether the classification rests ‘upon some ground of difference having a fair and substantial relation’ to the object for which it is proposed.”
Put another way, there must be a rational basis for the classification (Riley v County of Monroe, 43 NY2d 144, 149). It has long been recognized that Judges may pursue an equal protection claim when through improper classification they are receiving less pay than other Judges of the same court performing the.same duties (Matter of Benvenga v La Guardia, 182 Misc 507, 510, affd 268 App Div 566, affd 294 NY 526). Plaintiffs can succeed upon a claim that a salary differential based upon a territorial classification is irrelevant to the achievement of a valid State objective by proof that “the jurisdiction practice and procedures of the *** Courts *** and the functions, duties and responsibilities of their judges, are identical” (Weissman v Evans, NYLJ, June 2, 1980, p 16, col 4). Upon the State takeover of funding of the judicial system the continuance of unjustified disparities in salaries beyond a brief *112 period of transition serves no legitimate governmental purpose (Alesi v Procaccino, 47 AD2d 887).
Applying the two-prong test set forth in Matter of Abrams v Bronstein (33 NY2d 488, supra) requires a review of the factual findings contained in the Report of the Chief Administrator of the Courts to the Governor, the Legislature and the Chief Judge of the Court of Appeals-of December 1, 1979. That report was submitted pursuant to chapter 55 of the Laws of 1979 which provided: “The chief administrator of the courts shall investigate whether unreasonable disparity exists in the compensation of judges of courts of the same rank in different parts of the state. On or before December first, nineteen hundred seventy-nine, the chief administrator shall prepare and transmit to the legislature, the governor and the chief judge of the court of appeals a report of his findings, together with appropriate legislative recommendations to eliminate unreasonable disparity, if any, by April first, nineteen hundred eighty-two.”
In that report the Chief Administrator of the Courts found:
“As previously noted, salary determinations by local governments provide the principal historical antecedent for the salaries of county-level and city courts. While statistics indicate a degree of correlation between population, caseload and compensation, there is no uniform consistency * * * Indeed, there are glaring inconsistencies * * *
“Based upon the foregoing, I find that disparity in judicial compensation exists only in the trial courts which were previously funded by county and city governments. I further find that this disparity results from the former system of court funding by local government, and that the continuation of disparity in courts which are now funded by the state is neither necessary, desirable or equitable.”
Contrary to the position of the Attorney-General, the report of Judge Evans constitutes some proof of the facts therein, since it has long been held that a court can take judicial notice of the conditions disclosed by the report of a commission directed by the Legislature to investigate and *113 report upon a subject (Cockcroft v Mitchell, 187 App Div 189, 193, affd 230 NY 630). The report establishes that the basis of the classification of salaries of County, Family and Surrogate Court Judges contained in the Unified Court Budget Act is purely a vestige of local politics unrelated in a rational manner to population, case load, jurisdiction or any other relevant criteria. If the defendants had any proof of facts to the contrary they were, of course, required to produce that proof on this motion for summary judgment, which they have not done (Bethlehem Steel Corp. v Solow, 51 NY2d 870).
Applying the second prong of the test, i.e., discerning the governmental objective advanced by the classification, discloses no legitimate governmental objective advanced by the classification. In fact, the classification directly contravenes the purpose behind the movement to a unified court system and the enactment of a unified court budget. Indeed, in section 1 of chapter 966 of the Laws of 1976, the Legislature stated its purpose in taking over the costs of operating the courts as “Funding by a single fiscal authority will enable the allocation of moneys and manpower when needed unimpeded by artificial local boundaries” (emphasis supplied). In a unified court system where Judges are routinely transferred outside their districts for up to six months at a time, and artificial local boundaries are to be ignored with respect to the allocation of money, it serves no legitimate governmental purpose for Judges of the same courts with identical constitutional jurisdiction and duties to be paid unequally. There is no rational basis for the classifications here under review.
The court shall grant summary judgment to the defendant Edward V. Regan, dismissing the complaint as against him, and shall grant summary judgment to the plaintiffs as against the remaining defendants to the extent of declaring that the Unified Court Budget Act, as enacted by chapter 966 of the Laws of 1976, chapter 55 of the Laws of 1979, and chapter 881 of the Laws of 1980, violates the equal protection clauses of the Federal and State Constitutions insofar as plaintiffs are provided lower salaries than granted to other Judges of the same courts performing similar duties and that plaintiffs are entitled to *114 receive retroactive salary increments from April 1,1977 to correct the disparity. All the foregoing without motion costs.