In the Matter of GEORGE W. MARTHEN, as Hamilton County Court Judge and Surrogate, Fourth Judicial District, Respondent, v HERBERT B. EVANS, as Chief Administrative Judge of the Courts of the State of New York, Appellant.

Fourth Department, December 11, 1981

APPEARANCES OF COUNSEL

*Paul A. Feigenbaum (Michael Colodner* of counsel), for appellant.

*Harry H. Lipsig (Pamela A. Liapakis* and *Cheryl R. Eisberg* of counsel), for respondent.

SIMONS, J. P.

Petitioner, a County Judge elected in Hamilton County, seeks by this CPLR article 78 proceeding to review the actions of respondent Chief Administrative Judge of the State of New York and others by which he was assigned to preside at terms of court in Westchester and Suffolk Counties in 1980. The assignments were made by the Chief Administrative Judge in 1979 as part of a State-wide program instituted by Chief Judge COOKE to alleviate the backlog of cases in the courts.

The petition alleges two causes of action. In the first, petitioner alleges that to require him and others like him to perform judicial duties in counties other than those in which they reside for a salary significantly less than that earned by similarly-situated Judges in the transferee counties is arbitrary and capricious and a violation of article 7-B of the Judiciary Law. In the second cause of action, petitioner alleges that the disparity in salary constitutes a denial of due process and equal protection of the law in violation of both the State and Federal Constitutions. He seeks a declaration that the salaries of Judges and Surrogates of identical venue and jurisdiction must be adjusted so that all such Judges and Surrogates are paid the same salary as that paid to the highest paid jurist of that particular court; a declaration that petitioner and other Judges transferred to other counties be paid the same as the equivalent Judges in the transferee counties; damages equaling the difference between the salary paid to petitioner and others like him in their home counties and that paid to jurists in the transferee counties for the period of transfer, and the attorney's fees and expenses incidental to this proceeding.

After service of the petition, respondents moved to dismiss upon objections in point of law. Special Term granted the motion as to respondents Chief Judge COOKE, Presiding Justice MAHONEY of the Third Department, Administrative Justice HARVEY of the Fourth District and State Comptroller Regan. It denied the motion to dismiss as to Chief Administrative Judge EVANS and it also denied petitioner's request for class action relief (see *Matter of Marthen v Evans,* 104 Misc 2d 553). Justice SWEENEY of the Appellate

Division, Third Department, granted leave to appeal and the matter was transferred to this court for review and determination.

I

Under the State Constitution and implementing statutes, the Chief Administrative Judge is charged with the duty of supervising the administration and operation of the State-wide Unified Court System (NY Const, art VI, § 28, subd b; Judiciary Law, § 212, subd 1). To that end, he is directed to assign Judges to terms of court and, when necessary to dispose of the business of the court, to assign Judges temporarily outside their districts to various other courts in the State in accordance with standards and policies promulgated by the Chief Judge of the Court of Appeals (NY Const, art VI, § 26; Judiciary Law, § 212, subd 1, par [c]; subd 2, par [c]). Acting pursuant to that authority, respondent assigned petitioner to two terms of court outside of his district as part of the transfer of 242 Judges of this State to 396 additional parts of court created in areas suffering from calendar congestion.

Petitioner acknowledges that a serious backlog of cases existed, that constitutional and statutory restrictions limited the number of Judges available (see NY Const, art VI, §§ 6, 10) and, therefore, that there was a need to transfer Judges. He contends, however, that his transfer was arbitrary and capricious because of the personal inconvenience it occasioned him and because of the disparity between his salary and that of similar Judges in the counties to which he was assigned. Special Term held that Supreme Court lacked the power to grant monetary relief against the State (citing *Matter of Dubner v Ambach,* 74 AD2d 949, affd 52 NY2d 910; *Automated Ticket Systems v Quinn,* 70 AD2d 726). It concluded, however, that it had jurisdiction to review respondent's order in this article 78 proceeding lest the transfer, being unreviewable, undermine and have a chilling effect upon "[t]he independent spirit of elected Judges (104 Misc 2d 553, 556, *supra)".* Explicit in Special Term's ruling was its concern that a Chief Administrative Judge might use his broad power of assignment for punitive purposes. The short answer to that, however, is that petitioner makes no contention that his transfer in this

case was punitive or that it was ordered in bad faith. Manifestly, considering that petitioner's assignment was part of a general and comprehensive plan, it was not motivated by such considerations.

The purpose of delegating power to respondent, authorizing him to make temporary assignments of Judges pursuant to the Chief Judge's plan, is to enhance judicial efficiency and to promote the public interest. Implicit in that power is the exercise of discretion in implementing planned assignments and absent claims of substance that this discretionary power has been put to an illegal or unconstitutional use the Chief Administrative Judge's authority is not subject to judicial review (see *Matter of Marro v Bartlett,* 46 NY2d 674, 681; see, also, *Ford v Clarke,* 204 App Div 5, affd 236 NY 606). To conclude otherwise would be to permit parties such as petitioner to render useless the efforts of respondent and the Chief Judge toward the elimination of the case backlog in this State. The Chief Administrative Judge's order did not impose an illegal duty on petitioner because respondent is empowered to transfer Judges. Nor did it, we determine here, illegally deprive petitioner of salary due. The petition fails, therefore, to state grounds for relief based upon arbitrary or capricious administrative action.

II

Petitioner's request that we declare him entitled to retroactive compensation, i.e., the difference between his 1980 salary and that paid to the Judges of equal rank in Westchester and Suffolk Counties, is based upon article 7-B of the Judiciary Law and the equal protection clause of the State and Federal Constitutions.*

---

* The disparity among judicial salaries which is the basis for this proceeding has been corrected by legislation enacted in 1980 and effective January 1, 1981. Chapter 881 of the Laws of 1980 provides, in pertinent part, as follows:

"§ 16. Subject to such rules and regulations as the chief administrator shall prescribe:

"a. Every state-paid judge or justice of the unified court system who is assigned from the court to which he was elected or appointed to another court or who is assigned to perform judicial duties at a location outside the county of his residence or, in the case of a judge or justice residing in the city of New York, outside such city, shall, during the time of such assignment, receive either the compensation to which he is entitled in the court to which he was elected or appointed, or the compensation received by a judge or justice in the court or location to which he is assigned, whichever is higher.

"b. If the additional amount of money payable to such a judge or justice pursuant to subdivision a hereof is less than the additional amount of money which would have been

Article 7-B of the Judiciary Law (as added by L 1979, ch 55) establishes the salaries of all Judges throughout the Unified Court System (except Town and Village Justices) and section 221-d provides a schedule of salaries to be paid to the Judges of the County, Surrogate and Family Courts. Not all Judges of equal rank are paid equally because the State Legislature in enacting the statute continued the judicial salaries formerly established by each county legislature (see *Weissman v Evans,* 82 AD2d 441, 443). Petitioner has been paid the salary statutorily established for the County Court and Surrogate's Court Judge of Hamilton County, and nothing in article 7-B requires that he be paid more if temporarily assigned to another county.

With respect to petitioner's claim that he has been deprived of equal protection of the laws because of the difference in salary, it has been held recently, and correctly so, we believe, that although a salary disparity presents the potential for a violation of a Judge's constitutional rights in some situations, a brief continuation of the disparity during the period of transition from the former system to the Unified Court System does not constitute such a violation *(Weissman v Evans,* NYLJ, June 2, 1980, p 16, col 4, mod 82 AD2d 441; see, also, *Alesi v Procaccino,* 47 AD2d 887, 888; but cf. *Cass v State of New York,* 109 Misc 2d 107). The *Weissman* case involved an action by the Judges of the Suffolk County District Court who claimed that their equal protection rights had been violated by the payment to them of a salary less than that paid to Nassau County District Court Judges. In denying plaintiffs' demands for relief, including retroactive compensation, the courts found that the disparity in salaries reflected the State Legislature's continuation of the salaries paid by the respective counties prior to the State takeover of judicial compensation; that Chief Administrative Judge EVANS had made recommendations to the Legislature aimed at eliminating disparity in judicial salaries; and that the Legislature had stated that it intended to eliminate such

payable for the performance of the above described judicial duties on the day immediately prior to the effective date of this section, then, notwithstanding the foregoing provisions of such subdivisions such judge or justice shall be paid the additional amount of monies so payable on such day."

The statute does not render this appeal moot, however, because petitioner seeks compensation for 1980, the year before the legislation took effect.

disparity by April 1, 1982 (L 1979, ch 55, § 4) (see *Weissman v Evans,* 82 AD2d 441, 443, *supra).* Accordingly, the court held that the continuation of the disparity until the 1982 legislative "deadline" did not constitute a violation of constitutional rights.

A similar situation is presented here. Prior to the unification of the court system, the salaries of County Court Judges and Surrogates were largely determined by the respective county legislature (see Judiciary Law, former § 182-a, repealed by L 1975, ch 150, § 1; see, also, L 1936, ch 879, § 2404). After court unification, the State initially continued the salaries as they had been established by each county legislature (see Judiciary Law, former § 183, subd 2, as added by L 1975, ch 150, § 6 and repealed by L 1979, ch 55, § 1). Ultimately it established a new salary structure, in which different salaries were authorized for Judges of different counties and, occasionally, for Judges of different courts within the same county (see Judiciary Law, § 221-d, as added by L 1979, ch 55, § 2). Simultaneously, the Legislature charged the Chief Administrative Judge with the duty to investigate whether unreasonable disparity existed in the compensation of Judges of courts of the same rank in different parts of the State, and it ordered him to report his findings along with appropriate recommendations to eliminate any such disparity by April 1, 1982 (see L 1979, ch 55, § 4). Respondent found that the salary disparity in the Unified Court System was not necessary, desirable or equitable (see Report of the Chief Administrator of the Courts to the Governor, the Legislature and the Chief Judge of the Court of Appeals of December 1, 1979, cited in *Weissman v Evans,* 82 AD2d 441, 443, *supra,* and quoted in *Cass v State of New York, supra,* at p 112). Accordingly, he made several recommendations to the Legislature aimed at eliminating it and chapter 881 of the Laws of 1980 followed.

The plan to alleviate the backlog of cases throughout the State by temporarily relocating some of the State's judiciary was announced on October 31, 1979 (see NYLJ, Nov. 1, 1979, p 2, col 4). On November 26, 1980 the Legislature eliminated, as of January 1, 1981, the disparity attacked by this petition (L 1980, ch 881, § 16). In light of the

urgency surrounding the backlog (see text of Chief Judge's plan, NYLJ, Nov. 1, 1979, p 2, col 4), the Legislature's own original goal to remedy inequities in judicial compensation (L 1979, ch 55) and the achievement of that goal with respect to transferred Judges (L 1980, ch 881), we conclude that the one-year continuation of the disparity complained of did not constitute a violation of petitioner's constitutional rights entitling him to retroactive pay of the differential.

The order should be reversed and the petition dismissed.

HANCOCK, JR., CALLAHAN, DENMAN and SCHNEPP, JJ., concur.

Order unanimously reversed, on the law, without costs, motion granted and petition dismissed.