TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 96-707 |
| of | : | |
| | : | August 5, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE TOM J. BORDONARO, JR., MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Is Labor Code section 1150 constitutional in prohibiting members of the Agricultural Labor Relations Board from engaging in any other business, vocation, or employment?

CONCLUSION

Labor Code section 1150 is constitutional in prohibiting members of the Agricultural Labor Relations Board from engaging in any other business, vocation, or employment.

ANALYSIS

Labor Code section 1150 **Footnote No. 1** provides:

"Each member of the board and the general counsel of the board shall be eligible for reappointment, and shall not engage in any other business, vocation, or employment."

The "board" is the Agricultural Labor Relations Board (§ 1140.4, subd. (i); "Board"). We are asked whether section 1150 is constitutional in prohibiting Board members from engaging "in any other business, vocation, or employment." We conclude that the statutory prohibition is constitutional.

In addressing this question, we first note that section 1150 is part of the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (§§ 1140-1166.3; "Act"). The purpose of the Act is to provide collective bargaining rights for agricultural employees. Section 1140.2 states:

"It is hereby stated to be the policy of the State of California to encourage and protect

the right of agricultural employees to full freedom of association, self-organization, and designation of representatives of their own choosing, to negotiate the terms and conditions of their employment, and to be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. For this purpose this part is adopted to provide for collective-bargaining rights for agricultural employees."

The Act is administered by the Board (§§ 1141-1151.6), which consists of five members appointed by the Governor with the advice and consent of the Senate. The Board has the authority to delegate certain of its powers to members of its staff. Subdivision (b) of section 1142 provides:

"Besides the principal office in Sacramento, as provided in subdivision (a), the board may establish offices in such other cities as it shall deem necessary. The board may delegate to the personnel of these offices such powers as it deems appropriate to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings, to determine whether a question of representation exists, to direct an election by a secret ballot pursuant to the provisions of Chapter 5 (commencing with Section 1156), and to certify the results of such election, and to investigate, conduct hearings and make determinations relating to unfair labor practices. The Board may review any action taken pursuant to the authority delegated under this section upon a request for a review of such action filed with the board by an interested party. Any such review made by the Board shall not, unless specifically ordered by the board, operate as a stay of any action taken. The entire record considered by the board in considering or acting upon any such request or review shall be made available to all parties prior to such consideration or action, and the board's findings and action thereon shall be published as a decision of the board."

Nevertheless, Board members essentially serve "full-time" in the performance of their official duties. **Footnote No. 2**

In addressing the constitutionality of section 1150, we will analyze (1) the possible constitutional rights of Board members that are affected by section 1150, (2) the standard of review to be applied in such circumstances, and (3) the application of the appropriate standard to section 1150 in light of similar applications in other cases.

1.        The Right To Work

Section 1150 prohibits all forms of outside employment by Board members. Does such prohibition interfere with or regulate any recognized constitutional rights of the members?

In *Truax* v. *Raich* (1915) 239 U.S. 33, the court found a "right to work" in the due process clause of the Fifth Amendment to the United States Constitution **Footnote No. 3** and its substantive component in the Fourteenth Amendment. **Footnote No. 4** As stated in *Truax*:

". . . It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fifth] Amendment to secure. . . . " (*Id*., at p. 41.)

Or as subsequently stated in *Meyer* v. *Nebraska* (1923) 262 U.S. 390, 399, in the context of the Fourteenth Amendment:

"While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been

guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, *to engage in any of the common occupations of life*, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." (Italics added.)

California, likewise, has recognized a constitutionally protected "liberty" interest in the right to work in the common occupations of life. (See *Frink* v. *Prod* (1982) 31 Cal.3d 166, 174-175, fn. 12; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 17; *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 579.) In *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 470, the court explained: "An individual's freedom of opportunity to work and earn a living has long been recognized as one of the fundamental and most cherished liberties enjoyed by members of our society."

Accordingly, it may be urged that section 1150 interferes with a Board member's constitutionally protected "liberty" interest under the Fifth and Fourteenth Amendments to engage in "the common occupations of life."

### 2. The Standard of Review

In *Bowman* v. *Township of Pennsauken* (D.N.J. 1989) 709 F.Supp. 1329, 1346, the court applied the "rational relationship" test to a city council's resolution governing outside employment of its off-duty police officers:

"The court must next resolve whether the resolution unconstitutionally infringes upon the officers' liberty interest in pursuing a common occupation. The resolution of this question begins with the determination of the appropriate standard of review. Municipal resolutions that do not impinge upon a fundamental right or suspect class are reviewed under the rational relationship test. [Citations.] In fact, the Supreme Court has held that municipal regulations governing police employment are entitled to a presumption of validity. [Citation.] This rational relationship test has been followed by numerous courts analyzing challenges of a broad array of police regulations. . . .

"Under the rational relationship test, the court must determine whether the adopted resolution is `so irrational that it may be branded "arbitrary," and therefore a deprivation of [plaintiffs'] "liberty interest."' [Citations.] . . . ."

In *Woods* v. *Holy Cross Hospital* (5th Cir. 1979) 591 F.2d 1164, 1176, the court explained the rational relationship test as follows:

"The state must prove a compelling reason for a law only if it restricts a fundamental right; so long as such a right is not affected a law need only rationally relate to a legitimate government end. `Only when a law is a totally arbitrary deprivation of liberty will it violate the substantive due process guarantee.' . . ."

We believe that California courts would similarly apply the rational relationship test to the application of section 1150 in the present circumstances. (See *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18; *California Gillnetters Assn.* v. *Department of Fish and Game* (1995) 39 Cal.App.4th 1145, 1152-1155.)

### 3. Application of the Standard of Review

The "outside" activities and employment of public officers and employees in California are subject to regulation under various conflict of interest laws (see Gov. Code, §§ 1090-1098; 8920-8926

subject to regulation under various conflict of interest laws (see Gov. Code, §§ 1090-1098, 8920-8926, 87100-87500) and authorized "incompatibility statements" issued by their individual employing agencies (see Gov. Code, §§ 1126, 19990; *Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736). While no California case has definitively ruled upon the constitutionality of a statute or ordinance containing an absolute prohibition upon outside employment, two cases have assumed the validity of the rules of a city fire department prohibiting other employment. (See *Lake* v. *Civil Service Commission* (1975) 47 Cal.App.3d 224; *Vick* v. *Patterson* (1959) 158 Cal.App.2d 414.)

Cases from other jurisdictions have upheld prohibitions against outside employment in a variety of contexts. Some have involved an absolute prohibition, while most have involved more limited restrictions such as the necessity to obtain prior agency approval for outside activities. We recognize that most have involved police officers and firefighters where the prohibition is to ensure their availability to respond to emergencies and their physical fitness to perform necessary duties. (See, e.g., *Decker* v. *City of Hampton, Va.* (E.D. Va. 1990) 741 F.Supp 1223 [police officers]; *Trelfa* v. *Centre Island* (1976) 389 N.Y.S.2d 22 [police officers]; *Flood* v. *Kennedy* (1963) 239 N.Y.S.2d 665, 190 N.E.2d 13 [police officers]; *Jurgens* v. *Davenport* (Iowa 1958) 88 N.W.2d 797 [police officers]; *Hayes* v. *Civil Service Com.* (Ill. App. 1952) 108 N.E.2d 505 [police officers]; *Matter of Calfapietra* v. *Walsh* (N.Y. 1945) 62 N.E.2d 490 [firefighters].) In *Dake* v. *Bowen* (1987) 521 N.Y.S. 2d 345, 347, for example, the court noted:

"As to the regulation prohibiting outside, security-related employment, since a total ban on outside employment by police officers has been upheld as furthering legitimate law enforcement and public safety objectives [citation], it would again follow that the instant, less restrictive regulation does not raise any constitutional question. Defendants have also demonstrated a rational basis for imposing it, in order to avoid potential conflicts of interest and to minimize the risk of claims of liability for off-duty conduct of members of the Department."

Similarly in *Goldstein* v. *Bartlett* (1978) 401 N.Y.S.2d 706, the court upheld a rule severely limiting the right of court-employed attorneys from practicing law for others, rejecting the contention that their constitutional rights to due process and equal protection were violated by the rule. In *Civil Service Bar Assn., Etc.* v. *Schwartz* (1982) 452 N.Y.S.2d 478, the court upheld a city regulation prohibiting the private practice of law by attorneys employed by the city.

A few courts, however, have found that a ban on outside employment has not met the rational relationship test when considered in light of the particular circumstances. (See, e.g., *Benelli* v. *City of New Orleans* (La.App. 1985) 478 So.2d 1370; *City of Crowley Firemen* v. *City of Crowley* (La. 1973) 280 So.2d 897.)

In our view, the prohibition of section 1150 is constitutional under the rational relationship test. First, the statute ensures that Board members will devote their full time and energies to the duties of their office. Second, section 1150 constitutes a heightened conflict of interest proscription. It is reasonable to conclude that the Legislature intended for the members of the Board, who oversee and monitor agricultural labor relations, to be completely neutral and that the public perceives them as such. Banning all outside employment furthers that end.

Where a regulation is being tested under the due process requirement, the legislation will be presumed to be constitutional, and the courts will defer to the legislative policy if the law is not arbitrary or irrational. (See, e.g., *Usery* v. *Turner Elkhorn Mining Co.* (1976) 428 U.S. 1, 15; *West Coast Hotel Co.* v. *Parrish* (1937) 300 U.S. 379, 391-392, 398-399; *Nebbia* v. *New York* (1934) 291 U.S. 502, 536-538.) Even though the regulation may not "achieve perfection," "the reasonableness of a policy is evaluated based upon whether it is designed to achieve its legitimate objectives" (*Graham* v. *Kirkwood Meadows Pub. Util. Dist.*, (1994) 21 Cal.App.4th 1631, 1641; 80 Ops.Cal.Atty.Gen. 27, 31-32 (1997); 69 Ops.Cal.Atty.Gen. 191, 197 (1986).)

Section 1150, insofar as it restricts the outside employment of Board members, is rationally related to the purposes of ensuring that the members achieve optimum performance with respect to their duties and that they perform those duties free of any bias or lack of neutrality, actual or perceived.

In sum, we conclude that section 1150 is constitutional in prohibiting members of the Board from engaging in any other business, vocation, or employment.

* * * * *

**Footnote No. 1**
All references hereafter to the Labor Code are by section number only.
**Footnote No. 2**
The Unemployment Insurance Appeals Board (Unemp. Ins. Code, § 401), the State Board of Prison Terms (Pen. Code, § 5076), and the Youthful Offender Parole Board (Welf. & Inst. Code, § 1716) are other examples of "full-time" state boards.
**Footnote No. 3**
"No person shall . . . be deprived of life, liberty, or property, without due process of law."
**Footnote No. 4**
"[N]or shall any state deprive any person of life, liberty, or property, without due process of law."