In the Matter of the Judicial Settlement of the Estate of WILLIAM H. GRACE, Deceased.

Surrogate's Court, Saratoga County, November 21, 1930.

*Will W. Smith* [*William E. Bennett* of counsel], for the executors.

*Daniel C. McElwain*, for the residuary legatees.

*Hall & Carusone*, for the claimants Frank Grace and Margaret Brennan.

TUCK, S.  A claim is made against the estate by Frank Grace for $2.742 on account of rents alleged to be due him as the owner of an undivided one-fourth interest in certain premises in the city of Saratoga Springs in which the deceased was an owner of an undivided three-fourths interest.

The claim of the said Grace includes a claim for balances on account of rents which William H. Grace had received from the tenants, F. Simone, Henry the Barber, Earl L. Wildy, John N. Dunham and Samuel Murray, together with an amount which forms the principal part of the claim, for the remaining part of the premises which were not rented by William H. Grace, deceased, but which were occupied by him, on account of income received from parking and for the rental value of the house and café.  The claim covers a period of time from 1918 to 1927, inclusive.

The claim of Margaret Brennan is for the determination of the

ownership of a bank account which was deposited in the Saratoga National Bank on the 4th day of December, 1923, by William H. Grace and which was credited, as appears by the pass book, as follows:

"Dec. 4th, 1923...................$2,500.

"Wm. H. Grace or Margette Brennan."

The claim of John H. Williams is for work, labor and services and is not contested but was required to be proved against the estate by reason of the fact that the claimant was a creditor.

Taking the claims in the inverse order in which they are set out the court finds and determines that the claim of the executor, John H. Williams, has been proved and established, and is allowed at the sum of $550.

The claim of Margaret Brennan is disallowed for the reason that the deposit was not made in the Saratoga National Bank in such form that a right of survivorship existed and the courts have construed an account in such form as the present one to be one for convenience.

We come now to the third and remaining claim, which is the only one presenting any real question.

From the proofs produced it is established that Frank Grace owned a one-fourth interest in the entire premises known as the White House Café situate on the corner of Union and East avenues, in the city of Saratoga Springs, and almost directly opposite the entrance of the Saratoga Racing Association grounds. The remaining three-fourths interest was owned by William H. Grace in his lifetime.

There is no dispute that William H. Grace was in possession of the whole property and rented out certain portions of the property to various persons and that he was actually in occupation of the balance of the property.

Proofs have been offered that payments were made at various times by William H. Grace to Frank Grace on account of rents received but the amounts of the payments so made have not been proved. The claimant has stipulated as to the various rentals made by William H. Grace that certain balances still remain due and unpaid.

In view of the failure of the executors to establish the amount of payments alleged to have been made by William H. Grace to Frank Grace, the court must find and determine that the stipulated balances on account of the rents received admitted by the claimant are the only proofs which give any light upon this subject and the court finds and determines that the following rents from the following tenants are due to Frank Grace: $25, claimant's share of Simone

rent; $12.50, claimant's share of Earl Wildy rent; $2.50, claimant's share of Murray rent; $37.50, claimant's share of Dunham rent; total, $77.50.

The major part of the claim is now left which is for the rental value of that portion of the premises which William H. Grace occupied and for the profit which he is alleged to have made from the use of the property.

The law is well established in this State that the occupancy by one of several tenants in common of an estate of itself does not make the occupant liable to the cotenant for rent of the premises. (*Woolever* v. *Knapp*, 18 Barb. 265; *Adams* v. *Bristol*, 126 App. Div. 660; affd., 196 N. Y. 510.)

Where, however a tenant in common is in possession of premises under an agreement with his cotenant he may be liable for the rent under the agreement, or if a tenant in common is in sole occupation as a result of an ouster of his cotenants he is liable for the mesne profits. In the present case there is no claim of ouster and consequently there can be no recovery for the mesne profits.

Upon the record it appears that the decedent William H. Grace occupied the premises with the acquiescence of the claimant, Frank C. Grace, and under such circumstances unless there is proof before the court of an agreement to pay rent the estate of William H. Grace cannot properly be subject to the payment of any claim for a proportionate part of the rental value of the premises occupied by William H. Grace as distinguished from that portion of which he was in possession and which he rented out to other tenants.

The only proofs before the court concerning any agreement are fragmentary and do not state more than the bare substance of an agreement, if such there was. This proof is found in the testimony of Albert Grace, a nephew of the deceased, as to a conversation which took place in 1922 between the decedent and Albert Grace and at a time when Frank Grace was not actually present before the conversing parties, although Albert Grace states it to be his belief that Frank Grace heard the conversation.

Delphine Williams, wife of one of the executors, testified that after decedent's funeral she heard a conversation between her husband and Frank Grace to the effect that Grace claimed to be entitled to rent for the café and that William stated that the decedent and Grace had an agreement that decedent should pay taxes, upkeep and insurance and get the rent free. That claimant replied: " No, when he changed his will he broke the agreement."

Proof to the same effect is offered concerning a conversation between the executor Williams and the claimant Grace at a time when a meeting was held in the office of the executor's attorney

at which the claimant and his attorney as well as the executors and their attorney were present.

Such conversations ordinarily are had without prejudice, but there was no objection to the receipt of the testimony by the court upon that ground.

There is also the testimony of John Williams, one of the executors, concerning the same event testified to by his wife in respect to the conversations with Frank C. Grace the day after the funeral of William H. Grace.

Proof is offered that the taxes upon the property were paid each year by William H. Grace.

The foregoing proofs tend to show that there might have been an agreement between the claimant and William H. Grace, and if there was such an agreement, by it Frank Grace was precluded from making any claim for the portion of the premises occupied by the decedent. But if we disregard these proofs entirely we arrive at the same result, however, for without any agreement Frank Grace cannot sustain his claim for a portion of the profits, nor for any portion of the rental value of the property for six years prior to the decedent's death of the portion of the premises occupied by him.

Let a decree be submitted accordingly upon notice.