In the Matter of the Estate of BESSIE BURSTEIN, Also Known as BESSIE PALEY, Deceased.

Surrogate's Court, Kings County, November 21, 1934.

*Giden & Giden,* for Lillian Burstein.

*Hyman Solomon,* for Sam Burstein.

WINGATE, S. The question of law involved in the present controversy has many times been broached since the passage of the various enactments revising the laws respecting the property of decedents' estates which became effective on September 1, 1930, but so far as the court is aware, it has never been determined in any reported decisiou. The problem, in brief, concerns the right of a statutory distributee to occupy premises of which an intestate died seized, in opposition to the wishes of the administrator, and without the payment of any rental or return for use and occupation.

In its original report to the Legislature respecting proposed changes in the law (Leg. Doc. 1929, No. 62), the Commission to Investigate Defects in the Laws of Estates proposed as its first recommendation (p. 6) " the removal of the distinction so far as possible between real estate and personal property in their treatment as assets of an estate." Elaborating its thought in this connection, the report continued (pp. 14, 15): " The argument for the assimilation of realty and personalty, in their treatment as assets of an estate, justifies the grant of increased powers of administration over realty. * * * The Commission has proposed that · title shall not be vested in the administrator but that realty shall descend at death to the distributees, subject to the right of the administrator to manage it, and to sell it for the purposes of distribution after the judicial approval by the surrogate. * * * The Commission recommends that the administrator be given power to take immediate possession of the intestate's real property, and to collect the accruing rentals during administration."

Consonant with these expressed purposes, the distinctions between the devolution of real and personal property were abolished in article 3 of the Decedent Estate Law, and a new section, designated section 123, was inserted in the same law reading as follows:

" Power of administrator over real property. The administrator of a decedent who dies after the thirty-first day of August, nineteen

hundred and thirty, shall have power to take possession of the real property of such decedent, and any interest therein, and to manage the same and to collect the rent thereof. Such administrator may sell, mortgage or lease the same subject to the limitations and in the manner authorized by the provisions of article thirteen of the surrogate's court act."

The note of the Commission appended to this section reads: " Authority to take possession and collect accruing rents is made an incident to the appointment."

The observations of the Commission respecting the purposes of the changes in the law as a whole and particularly in regard to the effect of the section in question, must be taken as a conclusive demonstration of the legislative intent in the enactments affected. (*Matter of Quenzer*, 152 Misc. 796, 799, and authorities there cited.)

(1) So far as presently pertinent this intent was: the real estate of an intestate " shall descend at death to the distributees, *subject to the right of the administrator* to manage it " (italics not in original); (2) " the administrator be given power (a) to take immediate possession of the intestate's real property, and (b) to collect the accruing rentals during administration," (c) which powers are " made an incident to the appointment;" (3) " the removal of the distinction so far as possible between real estate and personal property in their treatment as assets of an estate."

That the enactments made were aptly worded to effectuate these purposes is not open to serious question.

It is a familiar principle, recognized since time immemorial, that an executor or administrator, from the moment of his appointment and qualification, is vested with a possessory right to all personal property of the deceased. (*Matter of White*, 136 Misc. 631, 633; *Matter of Booth*, 139 id. 253, 254.) His holding, while fiduciary, and not beneficial, differs in no respect, as far as third parties are concerned, from that of an absolute owner. He is accordingly authorized to bring action and recover, like any individual owner, for any invasion of his rights as absolute legal owner of the property, and such suit may be brought by him " either individually or in his representative capacity, and this for the reason that no matter in which capacity a recovery is had the recovery becomes assets of the estate for which he is accountable." (*Leavitt* v. *Scholes Co.*, 210 N. Y. 107, 111.)

In the consideration of the problem at bar, it is vitally essential that this basic principle be clearly borne in mind and that it be recognized that the administrator is vested as legal owner with all of the assets of the estate as against all the world and that no other person has any right or interest in respect thereto except through him and by reason of his equitable fiduciary obligations.

Prior to the changes in the laws effective in 1930, these assets consisted only of personal property, but by these enactments the administrator was given an additional asset pertaining to realty, namely, the possessory right to the intestate's real property during the period of administration. This new asset was consolidated in his hands with his previous holdings of personalty. Under the previously existing laws, the real property of the intestate descended *in toto* to his heirs at law (former Dec. Est. Law, § 81), complete title vesting in them as of the moment of death. (*Waxson Realty Corp.* v. *Rothschild*, 255 N. Y. 332, 336; *Kingsland* v. *Murray*, 133 id. 170, 174; *Matter of Doyle*, 133 Misc. 647, 649.) This was altered by the enactments under consideration. Legal title, it is true, still vests in the statutory distributees, but their right is subject to the rights granted to the administrator of taking immediate possession and collecting the rentals thereof. There is a subtraction from the previously existing rights of the heirs at law, or distributees as they are now called, and the part which is taken away is expressly given to the administrator. The latter, in effect, has become a tenant of the entire realty owned by the intestate, the duration of his tenancy coinciding with the period of administration of the estate. The distributees are, in essence, remaindermen whose rights of possession and enjoyment mature only upon the termination of the statutory tenancy of the administrator.

With the attainment of this conception, the solution of the propounded problem becomes obvious. The administrator, being vested with an additional estate asset similar in nature to a lease of the real property for the duration of his incumbency of the office, possesses not only the right but the obligation to conserve this asset and make it productive for the benefit of his *cestuis que trustent* in a manner similar to any other asset in his charge or under his control. If he fails to do so, he is subject to surcharge for his dereliction.

The vesting in the administrator of the right to possession of this asset inevitably involves the further possession by him of the ability to defend it against encroachment or injury by others, and should he fail to avail himself of the possible remedies in this regard, he would unquestionably subject himself to consequent liability.

A certain amount of misconception respecting the situation has arisen by reason of the fact that under section 118 of the Surrogate's Court Act the person to whom letters of administration are usually awarded is himself a distributee of the estate and thus an ultimate cotenant with other statutory distributees; and of the further principle of law that one cotenant of real property cannot recover rental, or for use and occupation from another, in the absence of

an express agreement to that effect. (*Wilcox* v. *Wilcox*, 48 Barb. 327, 329, 330; *Burchell* v. *Burchell*, 96 Misc. 600, 603; affd., 178 App. Div. 924; *Matter of Grace*, 138 Misc. 348, 351; affd., 232 App. Div. 785; *Cole* v. *Cole*, 57 Misc. 490, 491; *Mesnig* v. *Mesnig*, 81 id. 290, 291, 292.)

The fallacy of this position is twofold. In the first place, the administrator, as such, is a different legal person from himself as distributee. (*Rathbone* v. *Hooney*, 58 N. Y. 463, 467; *Collins* v. *Hydorn*, 135 id. 320, 324, 325; *Leonard* v. *Pierce*, 182 id. 431, 432; *Williams* v. *Fischlein*, 144 App. Div. 244, 245; *Pardee* v. *Mutual Benefit Life Ins. Co.*, 238 id. 294, 296; *Matter of Ebbets*, 149 Misc. 260, 266 *et seq.*) In the former capacity he is a cotenant with no one, but holds a temporarily paramount legal title to the complete use of the real estate. Secondly, viewing the matter from the standpoint of the distributee who is not the administrator, the latter is not a cotenant, so far as relates to the use of the property prior to the termination of the period of distribution. He was prior to the alteration in the laws effective in 1930, but since that time he possesses merely a right similar to a right of reversion, while the administrator is in a position analogous to a lessee for a term. Any intrusion by the ultimate codistributee upon the property prior to the completion of the administration is wholly unwarranted and the act of a mere trespasser.

Under ordinary circumstances, it would be the obligation of the administrator to seek the protection of his rights, not in the Surrogate's Court, but in a court of general jurisdiction. In a number of similar instances, however, such courts have referred the outraged administrator to this court for relief, with the result that this possessory asset of the estate has become impaired or wholly dissipated. Relief for those in the position of the present applicant is urgently required in the interest of a conservation of the estates in their charge.

Whereas it might be deemed an undue extension of the authority of the court under section 205 of the Surrogate's Court Act to require this respondent to place the administrator in possession of an asset of the estate of this description, such relief is well within the general equitable grant of jurisdiction contained in section 40.

An order will accordingly be made directing the respondent forthwith to remove from the premises 380 Quincy street, Brooklyn, N. Y., and prohibiting him from in any manner interfering with the possession, control or management of said premises by the administratrix of this estate.

Enter order on notice accordingly.