Howansky v Howansky (2025 NY Slip Op 52083(U))

[*1]

Howansky v Howansky

2025 NY Slip Op 52083(U)

Decided on June 10, 2025

Surrogate's Court, Saratoga County

Schopf, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 10, 2025
Surrogate's Court, Saratoga County

David Howansky, Jr. As the Executor of the Estate of David Howansky, Petitioner/Licensor,

againstTimothy A. Howansky, Respondent/Licensee.

File No. 2021-465/B

William J. Keniry, Esq.Tabner, Ryan & Keniry, LLPAttorneys for David Howansky, Respondent18 Corporate Woods Blvd.Albany, New York 12211Timothy Howansky, RespondentSelf-Represented Litigant, Pro Se

Jonathan G. Schopf, S.

This matter comes before the Court on a Holdover Petition to Recover Possession of Real Property pursuant to Article 7 of the New York State Real Property Actions and Proceedings Law [RPAPL] which seeks, intra alia, possession of certain real property located at 330 Eastline Road, Ballston Spa, New York 12020 which is at issue in this Estate.
Decedent passed away on July 7, 2021.[FN1]
Decedent's Last Will and Testament dated December 11, 2013 was filed with Saratoga County Surrogate's Court on July 16, 2021 under File No.: 2021-465. The Will is simple and leaves no specific bequest. At Article Three the Will contains a residuary clause which simply disposes of all the decedent's property, real and personal to his three children, Timothy Howansky (referred to herein as "Respondent" or "Timothy Howansky" interchangeably), David Howansky, Jr. (referred to herein as "Petitioner" [*2]or "David Howansky, Jr." interchangeably), and Ruth Powell in one-third (1/3) shares. The Will nominates Timothy Howansky as Executor and David Howansky, Jr. as successor.
On June 23, 2022 a petition for probate was filed by Timothy and amended on September 6, 2022 and September 8, 2022. The petition [FN2]
lists personal property worth $301.93 and real property worth $326,400.00 (presumed to be the property that is the subject of this proceeding). Objections were filed by Ruth and David on November 15, 2022 and supplemented by an October 27, 2023 filing. Thereafter, a hearing on the objections was held November 8, 2023 and continued on December 15, 2023. On January 29, 2024 Respondent through his counsel filed a motion for recusal of Judge Coffinger, a new trial, and for sanctions against Objectants. The hearing continued on February 15, 2024 and Judge Coffinger denied the motion to recuse and reserved on the other requests. On April 30, 2024, the hearing concluded. Following post-trial submissions, the Court issued it's Decision and Order on October 1, 2024 (amended on October 31, 2024), which such Order declined to appoint Timothy Howansky as the Executor and appointed David Howansky, Jr. as Executor pursuant to the Will. A Notice of Appeal was filed by Respondent on October 7, 2024. Action on such appeal on part of Respondent is pending. Thereafter on November 23, 2024 Respondent, through his counsel filed a motion seeking permission to file a SCPA §711 removal proceeding to remove David Howansky as Successor Executor. That motion was denied on March 27, 2025, in part due to issues that are again raised in this proceeding and determined once more herein.
Pre and Post Hearing Filings
There are several threshold matters that ought properly be addressed. On May 29, 2025, this Court issued a letter order denying dismissal of these proceedings, a stay on further litigation, and other relief contained in a proposed Order to Show Cause submitted by Timothy Howansky. Such order also resolved a point of contention between the parties which was being litigated via various correspondences to the Court and determined, that Mr. Howansky is free to pursue his own defense of the eviction proceeding on a pro se basis, despite his representation by counsel in other estate proceedings which were filed in this Court. See, SCPA §203 and the holding of Estate of Marie B. Dinapoli, 1996 NYLJ LEXIS 7684 (Sur. Ct. Bronx Co. 1996) and the cases cited therein.
By the same letter, the Court accepted the Verified Affirmation of Timothy Howansky dated May 28, 2025, the Exhibits annexed thereto, and the included Memorandum of Law collectively as an Answer to the pending petition for eviction. On June 3, 2025, petitioner filed a Memorandum of Law with the Court opposing the Answer. On June 4, 2025 the parties appeared for the summary proceeding. The Court advised the parties that the issues raised by Timothy Howansky would be treated as defenses to the petition and a written decision on the issues of law contained therein would be forthcoming following the conclusion of the summary proceeding and the arguments of the parties. Thereafter on June 5, 2025, Respondent filed additional documents in support of his position and on June 9, 2025 the Petitioner filed [*3]additional documents and a Memorandum of Law supporting his position. The Court declines to review any of these post-trial submissions and proceeds on the record developed at the hearing.
Before reaching a conclusion on the matter of eviction, a discussion of each such defense raised by the Respondent follows.

Subject Matter Jurisdiction of the Surrogate's Court
At the onset of the proceeding, the Court determined on the record over the objection of Timothy Howansky that the Surrogate's Court has jurisdiction to hear a summary proceeding under Article 7 of the RPAPL. This ruling is now reduced to writing.
The Surrogate's Court has jurisdiction over such matters where it involves the affairs of the decedent and the ejectment or eviction is part of the process of administering the estate, see, Estate of Taylor, 2005 NY Misc. LEXIS 3263 [Surrogate's Ct. Kings Co. 2005], citing, Matter of Piccione, 57 NY2d 278 [1982]. Piccione is the seminal case on the subject of jurisdiction of the Surrogate's Court vis-a-vis RPAPL Article 7 and held that the Surrogate's Court's broad constitutional authority extends to RPAPL Article 7 despite the fact that a reading of RPAPL §701 would appear to divest the Surrogate's Court of such authority. Nonetheless, as this is a proceeding brought by an executor to remove a distributee occupant of estate property so that such property can be sold, the proceeding directly affects the affairs of the decedent and the administration of the estate, for which the Surrogate's Court is enumerated with exclusive constitutional jurisdiction. See SCPA §§201, 202 and Piccione, supra, generally. This should also properly be so, where as here, this is not only a summary proceeding for eviction, but, as will be discussed more fully herein, also involves at it's core, a dispute over possession and control of the subject real estate.

Personal Jurisdiction
The Court has obtained personal jurisdiction over the Respondent by both timely service of the underlying Notice of Petition and Petition upon him. Service of process was effectuated as provided by RPAPL §735(1) by both personal service and additional unrequired service by "nail and mail" was also made. Both of these were effected on May 22, 2025, which was more than ten (10) days and less than seventeen (17) prior to the hearing date as proscribed by RPAPL §733.
Although not raised by the Respondent, the Court would note that the affidavits of service themselves were not timely filed with the Court within three (3) days of service as set forth in RPAPL §735(2), rather, upon inquiry, Petitioner's counsel handed up the original affidavits for filing on the return date of the summary proceeding. The Court notes that this error does not affect the fact that service is complete upon the personal delivery of the papers to the respondent [RPAPL §735(2)(a), which here was timely accomplished, establishing jurisdiction over the Respondent. Moreover, the three (3) day filing requirement is not a prerequisite to the obtaining of jurisdiction, see, Eiler v. North, 121 Misc 2d 539 [County Court, Delaware Co. 1983].
CPLR §2001 provides, in relevant part, that "[a]t any stage of an action, including the . . . petition to commence an action, the court may permit a mistake, omission, defect, or irregularity to be corrected, upon such terms as may be just, or, if a substantial right of a party in not prejudiced, the mistake, omission, defect, or irregularity shall be disregarded" [emphasis added]. This failure to file the affidavit of service is a common mistake and omission in eviction proceedings. So much so, that courts have noted that "every Judicial Department has cited to CPLR §2001 for the proposition that a mere irregularity in the [in a summary proceeding] could [*4]be disregarded, rather than [being] a jurisdictional defect requiring dismissal" Nardeo v. Diaz, 2024 WL 371966, at 3 [Civ. Ct. Bronx Co, Jan. 31, 2024].
Here, Respondent appeared in court, acknowledged service both orally and in his answering papers, all of which confers jurisdiction of the person under the applicable provisions of the RPAPL. Additionally, though compliance with the SCPA is not required for a summary proceeding, all of these factors serve to confer jurisdiction over a person under SCPA §203.
Respondent did not assert any prejudice during the hearing, had an opportunity to submit extensive papers, which were treated as answering papers by the court, as-well-as an opportunity to be heard. As such, the Court considers the failure to file the affidavits of service timely to be a procedural irregularity similar to that in Cooley v. Vanslyke, 82 Misc 3d 342 [City Court, Little Falls, 2023] and Columbia Leasing L.P. V. Williams, 80 Misc 3d 884 [Civil Court, Queens County, 2023] and disregards the same.

Allegations of Defective Procedure in
  the Commencement of the Proceeding
Timothy Howansky sets forth in his Verified Affirmation dated May 28, 2025 that the holdover petition is facially void due to it being filed on a UCS-LHT1 form rather than as a petition under the SCPA. As set forth above, although unusual for a proceeding to be commenced as a summary proceeding for eviction under the RPAPL rather than a petition for ejectment under the SCPA, the relief sought is the same and the Court has jurisdiction to hear a summary proceeding brought under RPAPL Article 7.
Mr. Howansky also contests the authority of the Surrogate's Court to grant an eviction and issue a warrant of removal. Again, as set forth above, these powers are clearly within the statutory and constitutionally proscribed powers of the Surrogate. As such, the Court declines to dismiss the filing as improper, vacate the validly issued process, or take any action under SCPA §209 or CPLR §5015(a)(4) as requested by Respondent.
Likewise, Respondent's speculative assertions regarding CPLR§3020 and the modification of the petition subsequent to its verification are without proof or merit and will not be further considered.

Vacatur of the October 31, 2024Amended Decree and Letters
The Court notes that this issue was litigated and decided in this Court's March 27, 2025 Decision and Order [FN3]
in File No.: 2021-465/A. On October 3, 2024 a Decree was issued by the Acting Surrogate of Saratoga County (Coffinger, J., Acting Surrogate) in File No.: 2021-465/A which granted Letters to Objectant David Howansky, Jr. This Decree was Amended on October 31, 2024 and Letters were issued that date. Such Decision and Order which granted such Letters is currently on appeal to the New York State Supreme Court, Appellate Division, Third Department. Respondent has been acting as the estate fiduciary since the issuance of Letters.
As was set forth in the March 27, 2025 Decision and Order, the Court is constrained to keep the Letters in place as issued by Judge Coffinger and declines to vacate the subject Decree void ab initio as requested by Respondent. "Letters are conclusive until revoked or an appellate court reverses the decree that grants them." See, Capozzola v. Oxman, 216 AD2d 509 [2nd Dep't. 1995]. Moreover, "[t]he character of the court is not in any way altered by changes in the identity of the jurist (SCPA 104, 209[8]). The impact of any decision is no less because it was [*5]rendered by a prior Surrogate that if rendered by the current incumbent." See, Matter of Picker, 103 Misc 2d 594 [Sur. Ct. Bronx County 1980]. Moreover, all decrees signed are valid and binding pursuant to SCPA §209[2].
Thus, even if the Court accepted the arguments of Petitioner, it could not undo that which has been done previously in the case. A new Surrogate cannot act as an appellate court for a prior Surrogate, nor can the Court reverse the prior grant of the Letters. The Petitioner has appealed the Decree which resulted in the issuance of the Letters at issue, and he is free to raise issues which led to the granting of those Letters prior to their issuance at the Appellate Division, to the extent the same are preserved for review.
Here, the undersigned could only now examine the conduct of the fiduciary for his actions taken after the grant of letters and can only revoke on that basis [see, SCPA §711]. Such claims would be more properly brought before the Court in a duly filed petition pursuant to SCPA §711, which the Court notes has not been filed.
Lastly, as discussed herein, infra, Judge Coffinger was duly vested with the authority to issue the subject decree and the same remains binding and valid, unless and until overturned by an appellate court.

Request for in Kind Partition or
 Distribution of the Subject Property
Timothy Howansky seeks in-kind partition of the subject real property. This request was submitted as part of his original proposed order to show cause and related filings which were converted to answering papers. Regardless of the Court's treatment of those papers in this proceeding, the Respondent cannot seek affirmative relief in the nature of partition in an answer or by order to show cause. There has been no petition filed with the Court for such relief and all necessary parties have not been cited as would be required. As such, the Court cannot consider this relief.
To the extent that this Court has the power to consider or grant partition under these circumstances, is perhaps a question for a later day, should a party to the underlying estate file an appropriate petition in regard to the disposition of the property or the same is raised in an accounting.

The Authority of the Hon. Tatiana Coffinger
 to act as an Acting Surrogate in the County of Saratoga
Respondent also asserts that Judge Coffinger lacked the authority to issue her October 1, 2024 and October 31, 2024 Decrees which appointed David Howansky as Executor and granted Letters Testamentary and therefore concludes that David Howansky has no standing to bring this proceeding as he was not validly appointed Executor.
Respondent's argument is that under the New York State Constitution [Art. VI, Sec. 12] and 22 NYCRR Part 33, only the duly elected Surrogate has the authority to issue decrees in Saratoga County, unless there is a valid recusal, administrative order, or a filed oath of office for an Acting Surrogate. At the hearing, the Respondent introduced into evidence (over objection) non-certified copies of the oath of office for the undersigned as well as the undersigned's predecessor, the learned Justice Richard A. Kupferman.[FN4]

The Respondent argued that Judge Coffinger has no valid oath on file with the Saratoga County Clerk's Office designating her as Surrogate for the County of Saratoga, and as such, she lacked the authority to act as Public Officer's Law §10 was not complied with. He also argues that there was no recusal of a Surrogate of Saratoga County which would have permitted Judge Coffinger to act as an Acting Surrogate, and, finally, that there is no administrative order permitting the same. Respondent did not assert that Judge Coffinger is not a duly elected judge and likewise did not challenge that she may have an oath filed in her home county of Hamilton.
For purposes of this writing, the Court will take judicial notice that Judge Coffinger is a duly elected Judge in the County of Hamilton, where she sits as a multi-part bench judge serving County Court, Family Court, and Surrogate's Court. Her position and authority is delineated under the New York State Constitution [Art. VI, Sec. 14] which provides for the creation of the multi-part bench judge. The Court will also presume that she has duly filed her oath of office in the Hamilton County Clerk's Office as required by the Public Officer's Law.
Under a long and unbroken line of authority, the official acts of a de facto judge are valid and binding on the public and interested third persons, including petitioner, and the issue of the propriety of that Judge's appointment cannot be raised collaterally See, People ex. Rel. Devine v. Scully, 110 AD2d 733 [2nd Dep't. 1989] citing Matter of Morgenthau v. Cooke, 56 NY2d 24 [1982]; People v. Czajka, 11 NY2d 253 [1962]; Sylvia Lake Co. v. Northern Ore Co., 242 NY 144 [1926]; Curtin v. Barton, supra, 139 NY 505 [1893]; People ex rel. Sinkler v. Terry, 108 NY 1 [1888]; Morris v. Cahill, 96 AD2d 88, 93, [3rd Dep't. 1983]; People v. Pokoik, 83 Misc 2d 669, 670 [Village Court, Ocean Beach 1975]; Matter of Delehanty [Sullivan ], 202 Misc. 33, 36, [Supreme Ct. New York County 1952], affd. 304 NY 725 [1952]; People v. Baltusnik, 165 Misc. 173, 174 [County Ct. Madison County 1937].
As with the Respondent's request for in-kind partition of the real property, this argument must fail as the Respondent cannot collaterally attack the authority of a judge issuing a decree as a defense to the eviction proceeding. Cf., Winters v. Gould, 143 Misc 2d 44 [New York County 1989] for a discussion for when such conduct is sanctionable.
However, the argument is worthy of discussion nonetheless. New York State Constitution [Art. VI, Sec. 12] provides that:
a. The surrogate's court is continued in each county in the state. There shall be at least one judge of the surrogate's court in each county and such number of additional judges of the surrogate's court as may be provided by law.b. The judges of the surrogate's court shall be residents of the county and shall be chosen by the electors of the county.c. The terms of the judges of the surrogate's court in the city of New York shall be fourteen years, and in other counties ten years, from and including the first day of January next after their election.d. The surrogate's court shall have jurisdiction over all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates and actions and proceedings arising thereunder or pertaining thereto, guardianship of the property of minors, and such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law.e. The surrogate's court shall exercise such equity jurisdiction as may be provided by law.f. The provisions of this section shall in no way limit or impair the jurisdiction of the supreme court as set forth in section seven of this article. [emphasis added]22 NYCRR Part 33 provides that:
Temporary assignments of judges and justices of the Unified Court System pursuant to article VI, section 26, of the Constitution shall be made by the Chief Administrator of the Courts, in his or her discretion, subject to the Constitution, art. VI, section 28, subdivision b, after determining the need therefor and the advisability thereof consistent with the objectives of the Unified Court System; provided, however, that such temporary assignments shall be made with due regard for the courts from which and to which a temporary assignment is made and with due regard for the official and appropriate interests of the judge being assigned. When made for a period in excess of 20 calendar days, such temporary assignments shall be made by the Chief Administrator in consultation and agreement with the presiding justices of the appropriate appellate divisions on behalf of their respective courts, provided further that if the Chief Administrator and a presiding justice are unable to agree, the matter shall be determined by the Chief Judge. [emphasis added]The most critical portion of the Constitution in relation to this issue is New York State Constitution [Art. VI, Sec. 26] which provides that:a. A justice of the supreme court may perform the duties of office or hold court in any county and may be temporarily assigned to the supreme court in any judicial district or to the court of claims. A justice of the supreme court in the city of New York may be temporarily assigned to the family court in the city of New York or to the surrogate's court in any county within the city of New York when required to dispose of the business of such court.b. A judge of the court of claims may perform the duties of office or hold court in any county and may be temporarily assigned to the supreme court in any judicial district.c. A judge of the county court may perform the duties of office or hold court in any county and may be temporarily assigned to the supreme court in the judicial department of his or her residence or to the county court or the family court in any county or to the surrogate's court in any county outside the city of New York or to a court for the city of New York established pursuant to section fifteen of this article.d. A judge of the surrogate's court in any county within the city of New York may perform the duties of office or hold court in any county and may be temporarily assigned to the supreme court in the judicial department of his or her residence.e. A judge of the surrogate's court in any county outside the city of New York may perform the duties of office or hold court in any county and may be temporarily assigned to the supreme court in the judicial department of his or her residence or to the county court or the family court in any county or to a court for the city of New York established pursuant to section fifteen of this article.f. A judge of the family court may perform the duties of office or hold court in any county and may be temporarily assigned to the supreme court in the judicial department of his or her residence or to the county court or the family court in any county or to the surrogate's court in any county outside of the city of New York or to a court for the city of New York established pursuant to section fifteen of this article.g. A judge of a court for the city of New York established pursuant to section fifteen of this article may perform the duties of office or hold court in any county and may be temporarily assigned to the supreme court in the judicial department of his or her [*6]residence or to the county court or the family court in any county or to the other court for the city of New York established pursuant to section fifteen of this article.h. A judge of the district court in any county may perform the duties of office or hold court in any county and may be temporarily assigned to the county court in the judicial department of his or her residence or to a court for the city of New York established pursuant to section fifteen of this article or to the district court in any county.i. Temporary assignments of all the foregoing judges or justices listed in this section, and of judges of the city courts pursuant to paragraph two of subdivision j of this section, shall be made by the chief administrator of the courts in accordance with standards and administrative policies established pursuant to section twenty-eight of this article.j. (1) The legislature may provide for temporary assignments within the county of residence or any adjoining county, of judges of town, village or city courts outside the city of New York.(2) In addition to any temporary assignments to which a judge of a city court may be subject pursuant to paragraph one of this subdivision, such judge also may be temporarily assigned by the chief administrator of the courts to the county court, the family court or the district court within his or her county of residence or any adjoining county provided he or she is not permitted to practice law.k. While temporarily assigned pursuant to the provisions of this section, any judge or justice shall have the powers, duties and jurisdiction of a judge or justice of the court to which assigned. After the expiration of any temporary assignment, as provided in this section, the judge or justice assigned shall have all the powers, duties and jurisdiction of a judge or justice of the court to which he or she was assigned with respect to matters pending before him or her during the term of such temporary assignment. [emphasis added]A reading of the above shows that a sole Surrogate Judge duly elected under New York State Constitution [Art. VI, Sec. 12] cannot serve as a Surrogate Judge in a County for which they were not elected, even if assigned by the Chief Administrative Judge. Only a County Court or Family Court judge can be cross-assigned to such position outside of their home county pursuant to subdivisions (c) and (f).
Judiciary Law §184 provides for the number of Surrogates in each county. Importantly, Judiciary Law §184(2) mirrors this section and provides that: "[e]xcept where a separate surrogate has been or shall be elected, the county judge of each county outside of the city of New York shall be and serve as judge of the surrogate's court for his county [emphasis added]." A reading of this section makes clear that a County Judge merely serves as a Surrogate, it does not create a separate office. This is the case in Judge Coffinger's home county of Hamilton where unlike the County of Saratoga [FN5]
, the separate office of Surrogate does not exist and she was elected as a County Court Judge, serving as a Judge of the Surrogate's Court, see Judiciary Law §184(2) and Family Court as permitted under the Constitution.
Each year in the Fourth Judicial District, the Administrative Judge for the District prepares the Local Annual Order. This document provides for the assignments and, importantly [*7]here, cross-assignments of judges across the Judicial District. On December 29, 2022, the then District Administrative Judge, the Hon. Felix J. Catena promulgated the Order. This was done under his authority as vested by the 2023 Annual Order of Assignments established by the Chief Administrative Judge and the Presiding Justice of the Appellate Division Third Department, all as provided by the New York State Constitution, [Art. VI, section 28, subdivision b] and Judiciary Law §§212(1)(c) and 212(2)(c).
The purpose of delegating this assignment power to the Administrators of the Unified Court System is to authorize such Administrators to make temporary assignments of judges pursuant to the directives of the Chief Judge. The same is done to enhance judicial efficiency and to promote the public interest. See, Marthan v., Evans, 83 AD2d 415, 418 [4th Dep't. 1981].[FN6]
Implicit in that power is the exercise of discretion in implementing planned assignments. Absent claims of substance that this discretionary power has been put to an illegal or unconstitutional use the Chief Administrative Judge's authority to issue such assignments is not subject to judicial review. See, Marthans, Id. citing, Matter of Marro v. Bartlett, 46 NY2d 674, 681, [1979] and, Ford v. Clarke, 204 A.D. 5 [2nd Dep't. 1922], affd. 236 NY 606 [1923]. Respondent makes no such claim here.
The Court takes judicial notice of such Annual Order on file with the undersigned's Chambers for the purposes of this decision. At page 2 of the Annual Order, Judge Coffinger is listed and appointed as the Primary Judge for Saratoga County Surrogate's Court. As discussed above, Judge Coffinger is an elected County Court Judge where she serves the multi-bench Family Court, County Court, and Surrogate Courts in Hamilton County, not a sole Surrogate. As such, she can be assigned to be the primary Surrogate Judge in Saratoga County under New York State Constitution [Art. VI, Sec. 26], as those categories of judges (county and family) are specifically granted the requisite Constitutional authority.
New York State Constitution [Art. VI, Sec. 26, subdivision k] and the appointment by the District Administrative Judge granted Judge Coffinger the authority and power to hear cases and issue decrees in Surrogate's Court matters in Saratoga County in 2023, which she did in the underlying Estate matter (File No.: 2021-465/A) on October 3, 2024 and October 31, 2024 [FN7]
after hearing testimony in 2023.
Only the appointment by the Governor pursuant to New York State Constitution [Art. VI, Sec. 21, subdivision a] of an acting Surrogate and the filing of such Acting Surrogate's oath of office could have superseded Judge Coffinger's authority as conferred upon her by the Chief Judge and the District Administrative Judge. She was at all times a de facto officer filling the duties of a vacant position due to her assignment by the Administrative Judge and her [*8]performance of the duties of such office to the knowledge of the public [FN8]
. See, In Re: Pardee's Estate, 259 A.D. 101 [4th Dep't. 1940]. The Governor did not make any appointment to fill the vacancy and as such the decree at issue was validly issued.

Respondent's License to Occupy
No written license or lease was introduced as evidence at the summary proceeding. The Respondent testified that there was no written lease as there "was no reason to do that". Respondent further testified credibly that his father asked him to move in to help take care of him in the months immediately prior to his death. Respondent moved in to do so and has remained since. It would seem, and indeed the law requires that, if in fact a license was granted, that the same expired upon the death of the decedent. The critical point of testimony from Respondent on this issue was that he testified that he was a "caretaker" and not a "tenant". He also testified that he does not claim exclusive use of the property and recognizes that each sibling is a one-third (1/3) owner.
It is clear from the testimony adduced that there is no landlord/ tenant relationship by and between the decedent and Respondent or between the Estate and Respondent. Thus, Petitioner's filing under RPAPL §713 is proper. Specifically, the Petitioner's basis for removal of the Respondent in the instant summary proceeding is RPAPL §713(7), which states:
"He is a licensee of the person entitled to possession of the property at the time of the license, and (a) his license has expired, or (b) his license has been revoked by the licensor, or (c) the licensor is no longer entitled to possession of the property; provided, however, that a mortgagee or vendee in possession shall not be deemed to be a licensee within the meaning of this subdivision." [emphasis added]."A license ... is a revocable privilege given 'to one, without interest in the lands of another, to do one or more acts of a temporary nature upon such lands." Skaneateles Country Club v. Cambs, 40 NY3d 1026 [2023], quoting, Union Sq. Park Community Coalition, Inc. v. New York City Dept. of Parks & Recreation, 22 NY3d 648 [2014] and Trustees of Town of Southampton v. Jessup, 162 NY 122 [1900]. "The nature of the transfer of absolute control and possession is what differentiates a lease from a license." Z. Justin Mgmt. Co. v. Metro Outdoor, LLC, 137 AD3d 577, 578 [1st Dept. 2016].
The death of a party terminates or revokes a license due to the personal nature of the privilege, and the right of the licensee to occupy the real property pursuant to the license ceases upon the death of the licensor. 100 West 72nd Street Associates v. Murphy, 144 Misc 2d 1036 [Civ. Ct. New York County 1989], citing, [49 NY Jur., Easements, Section 223, p. 352].
On March 14, 2025, Petitioner executed a document entitled "Ten-Day Notice to Quit and Vacate Premises". The same was served on the Respondent March 25, 2025. The subject ten-day notice served to provide notice to Respondent that the license of the Respondent to occupy was revoked and was issued by David Howansky, Jr. as the Executor of the Estate of David Howansky.
It should be noted that there was no license to revoke, the same expired upon the death of [*9]the decedent, however, this does not render the ten-day notice invalid, as the notice also serves to advise the Respondent that he must quit his occupancy of the property and vacate.
RPAPL §713 "does not specify any requirement as to the contents of said notice." Helping Out People Everywhere, Inc. v. Deich, 160 Misc 2d 1052, 1054, [App. Term 2nd Dep't. 1994]. If there is a standard for "adequate notice," the baseline would be "the liberal standard of reasonableness" Fed. Nat. Mortg. Ass'n v. Simmons, 48 Misc 3d 24, 26 [App. Term. 1st Dep't. 2015]. Here, while there was adequate notice that vacatur of the premises was required within ten days, there was a defect in the notice as it specifically set forth a date upon which the Respondent should vacate (April 10, 2024), a date that had already passed at the time of the service of the notice (March 25, 2025).
Although, "[w]here deficiencies in a predicate notice under this section are not raised by an answer or motion, it is error for the court to review the notice and dismiss the proceeding sua sponte." (Niagara Capital LLC v. Cruz, 61 Misc 3d 45, 87 N.Y.S.3d 792 [App. Term 1st Dep't. 2019]), due to the Respondent's pro se status, the Court does review the ten-day notice and finds that the inclusion of an incorrect date to vacate is not fatal to the petition. The ten-day notice to quit clearly informed Respondent that his license to occupy was no longer valid. It described the premises sought to be recovered and identified the Petitioner and the Estate as the entity entitled to possession. It was signed by Petitioner in his capacity as Executor.
The law does not require that a vacate date even be given, only that the vacate date must be readily ascertainable. A notice to quit may be served without a date at all upon which it expires if the language, chronology and circumstances allow for a competent assessment of the date upon which action is expected. See, U.S. Bank, N.A. v. Ruvolo, 2024 NY Misc. LEXIS 4306 [NYC Civ. Ct. Richmond County]. Here the ten-day notice provided a date, although the year contained what is clearly a typographical error in that it listed "2024" instead of "2025". All other dates on the notice were correct with the "2025" year listed.
Additionally, although the incorrect date listed when Respondent was required to quit the premises had already chronologically passed when the ten-day notice was signed and served, the Respondent did have more than the required ten-days to quit the premises from the date he was served. Respondent was served on March 25, 2025 and the petition was filed on May 23, 2025, fifty-eight (58) days later. The notice was clear and unequivocal in that the Respondent was required to quit the premises within a ten-day period. As in Washington Mutual v. Hanspal, 18 Misc 3d 127(A) [2nd Dep't. 2007], although he disputes Petitioner's authority to issue the notice, Respondent could not reasonably have believed anything other than that he had ten days to vacate from the date the notice to quit was served upon him. The notice to quit was therefore legally sufficient, see generally, 1274 51 Realty, LLC v. Gross, 15 Misc 3d 1055 [Civ. Ct. 2007].
Likewise, the ten-day notice also failed to set forth the consequences of the failure of the Respondent to vacate, however, "[t]he absence of a statement in the notice that landlord would commence eviction proceeding in the event respondents failed to vacate did not render the notice jurisdictionally defective particularly since the governing statute, RPAPL § 713 did not require such a statement .....", see, Reifield Thompson & Riverside, Inc. v. Ho., N.Y.L.J., 8/14/95, p. 28, col. 5 [App. Term., 1st Dep't.] and see also, Taranto v. Alexejew, 1667 Misc 2d 223 [Dist. Ct. 1995].
The Respondent's mere presence and occupancy of the subject property following the death of the decedent does not constitute a legal occupancy as far as a continuation of the license is concerned, as the same was terminated at death by operation of law. However, this is a unique [*10]situation wherein the license holder is also a legatee and is in possession of a one-third (1/3) fee ownership interest and legal title immediately upon the death of the decedent.
The Respondent argues that as a one-third (1/3) owner of the property, he cannot be removed by summary proceeding as he is just as entitled to occupy the premises as are his siblings who are also titled owners at law and in constructive possession of the subject property. This merits a discussion of the Executor's authority to issue a ten-day notice to quit as the Executor rather than an owner seeking to be placed back in possession.
The Executor is not a titled owner due solely to his status as an Executor (other than his individual possessory status as a one-third (1/3) legatee and owner) as a " . . . fiduciary does not take title to such property, nor is he entitled to commissions" [Radigan, New York Estate Administration 2025 Ed., §17.01]. Although it would seem that the Executor is not in possession and thus had no right to issue the ten-day notice, this does not end the inquiry.
In the instant estate, the Executor does have broad powers over the subject property as conferred by Estates Powers and Trusts Law [EPTL] §11-1.1(b)(5). This is due to the fact that the subject property was not specifically devised under the Will. Had the Will disposed of the subject property as a specific bequest to the three (3) siblings, the Respondent's argument would win the day. Unfortunately for Respondent, as the Will distributed the decedent's entire estate in the residuary clause the executor is thus conferred with all powers under EPTL §§11-1.1(b)(5)(A) and 11-1.1(b)(5)(B) which collectively provide that:
With respect to any property or any estate therein owned by an estate or trust, except where such property or any estate therein is specifically disposed of:(A) To take possession of, collect the rents from and manage the same.(B) To sell the same at public or private sale, and on such terms as in the opinion of the fiduciary will be most advantageous to those interested therein. [emphasis added]Sale of the property is the Petitioner's stated intent and the purported purpose of the eviction proceeding and the Executor is entiled to take possession of the same pursuant to EPTL §§11-1.1(b)(5)(A). As such, this now merits a discussion and determination of the Executor's authority to remove the Respondent in order to marshal the property for appraisal and sale.

Executor's Authority to Commence a
 Summary Eviction Proceeding Against Respondent
"While it is true that legal title in real property vests in the statutory distributees upon the intestate death of the owner, their rights are subject to the rights granted the administrator of taking immediate possession and collecting the rentals thereof, in order to preserve the asset and make it productive to those with a beneficial interest therein" Estate of Grad, [NYLJ, Mar. 29, 2002, at 26, col 6]. Real Property descends at death to the distributees, subject to the right of the [executor] to manage it, and to sell it for the purposes of distribution, Matter of Burstein, 153 Misc. 515 [Sur. Ct. Kings County 1934]. However, this right of sale is not absolute. The powers conferred upon an executor to sell real property for which legal title has vested at death depends on the mechanism in the will which devised the property. If property is specifically bequeathed to a person or persons then the powers set forth in EPTL §11-1.1(b)(5) are not conferred and the executor must resort to the filing of a SCPA Article 19 proceeding to sell the property at issue if necessary to administer the estate.
A fiduciary may request the Surrogate for permission to bring a partition action pursuant to SCPA § 1901, only when the estate of a decedent is the owner of an estate in common in real property, however, where, as here, when the occupant is a legatee living in the premises having a [*11]present interest in the real estate, an ejectment action is warranted to carry out the disposition of real property pursuant to SCPA § 1902. As is set forth in Taylor, supra, a fiduciary has a right to possess and manage the decedent's realty so that he may sell the property in accordance with the statutory authority with which estate fiduciaries are imbued, as well as to collect the rentals thereof, and otherwise preserve the asset and make it productive to all those with a beneficial interest therein [SCPA § 1902; EPTL § 11-1.1], see also, Matter of Jenkins, N.Y.L.J., November 20, 2020, at 17, col. 2 [Sur. Ct. Bronx County] and Matter of Ford, N.Y.L.J., June 23, 2023, at 17, col. 2 [Sur. Ct. Bronx County].
As such, the Executor has the right to bring a proceeding for eviction or ejectment of the Respondent from the property. Here the Executor elected to bring a proceeding for eviction under RPAPL §713. All the statutory prerequisites for such proceeding were met, and as set forth herein, the Court has jurisdiction of the matter.

Eviction of Respondent
Based upon the testimony of the Respondent adduced at the hearing, it is undisputable that the Respondent has had sole use and occupancy of the subject premises, a one family house, since the death of the decedent. Respondent also testified that he had no intention of vacating the property. His two siblings have not had access, although Respondent testified that they never sought access, a point which was not refuted.[FN9]
Respondent has changed the locks to the house, however in all fairness, Petitioner testified that he has never asked for a key.
Respondent testified that he has not paid rent of any amount during his occupancy. He did testify, and it appears that Petitioner would agree, that Respondent has paid the real property taxes [FN10]
and has performed some items of maintenance to the house, as well as having continued some farming operations on the land. It would appear that Respondent has paid utility bills and insurance for the property up until the last few months, when there were some past due bills [*12]accumulated which Petitioner paid. A final disconnect notice from National Grid was discussed (but not introduced into evidence) in the sum of $211.29 as well as some other minor bills of $25.00 to $30.00. Based on the testimony of both parties it would hardly seem that the Respondent is financially burdening the Estate with all of the costs of the property especially given his voluntary payment of the property taxes and incurring costs for ongoing maintenance. Indeed, if these items are able to be reduced to a dollar amount, then there is a potential offset that Respondent may seek and receive a credit for in a final accounting.
Petitioner testified that Respondent resided in Respondent's home next door at 332 Eastline Road prior to the death of the decedent and that he has been living in the decedent's house at 330 Eastline Road since. He testified that there was no lease in effect on the subject property and that none had been produced by Respondent despite demands for the same. He testified that it is his intent to marshal the assets of the Estate, including selling the real property at issue and that Respondent is preventing the same and is excluding the Petitioner from the property which is hindering an appraisal and an inspection. The Petitioner expressed that he is selling the real property as that is the sole asset of the estate and funds are needed for administration.
Despite the payment of the costs of occupancy, the Court noted the palpable acrimony between Petitioner and Respondent at the hearing and must take judicial notice of the prior testimony in regard to the personal relationships between the parties. Clearly, this is not a harmonious family dynamic and there is an air of hostility by and between Ruth and David on one side and Timothy on the other. Although the Respondent was at times evasive and indirect in his testimony, notable was Respondent's credible testimony and anger regarding Petitioner's recent actions in requiring police assistance to "marshal" the cows from the subject property and having them slaughtered.[FN11]
It was clear that Respondent and his wife regarded these animals as pets and their slaughter at the behest of the Petitioner has caused a further rift in a case where there is clearly an irreparable family dynamic.
Nonetheless, Respondent's continued occupation, to the exclusion of the two (2) other legatees who are each vested with a one-third (1/3) ownership right in the subject property, prevents their access. This prevents the Executor from having the property appraised, identifying any personal property of decedent which may be present, and selling the estate's primary asset as is his choice as the Executor.[FN12]
In the final judgment, if Respondent is to be removed from the property as a 1/3 owner, it also stands to reason that the Petitioner and non-party Ruth Powell should not have rights to the property unequal to that of the Respondent. As to the Respondent's liability for the cost of use and occupancy and offsets for taxes and maintenance, the parties may adjudicate their various entitlement to credits for rent incurred and expenses owed in a final accounting proceeding.
The Surrogate's statutory power to order (or prevent) the sale of estate assets over the fiduciary's objection must be strictly construed and should not be exercised absent extraordinary circumstances. See Matter of Flaum, 168 AD2d 933, 565 N.Y.S.2d 633 [4th Dep't. 1990]. Thus, [*13]it stands to reason, that absent a petition which sets forth a compelling reason, which in this case has not been filed nor asserted in the answering papers, the Surrogate should not interfere in the executor's preferred method of liquidation of estate assets.
EPTL 11-1.1(b)(5)(B) gives a fiduciary the power to sell real property not specifically devised, and the decision to sell real property is usually a matter for the fiduciary's business judgment. Courts are loath to substitute their judgment for the fiduciary's. See Matter of Flaum, Id. ("where the decision involves the fiduciary's business judgment, the Surrogate generally should not usurp the fiduciary's powers..."); Matter of Limerick, N.Y.L.J., Oct. 23, 1984, at 11, col. 4 [Surrogate's Court, Bronx County], and, until and unless there is a showing of prejudice or manifest unfairness, this Court also declines to do so. As such, it is hereby
ORDERED, ADJUDGED, AND DECREED that the Petition of the Petitioner for eviction under RPAPL Article 7 is GRANTED and stayed for sixty (60) days; and it is further
ORDERED, ADJUDGED, AND DECREED that Respondent shall vacate the property along with all of his individually owned personal property located at 330 Eastline Road, Ballston Spa, New York within sixty (60) days of the date of this Decision and Order and shall not occupy the premises as a residence or for storage of personal property past that date; and it is further
ORDERED, ADJUDGED, AND DECREED that Respondent shall not remove any property of the Estate or that of his siblings from the premises; and it is further
ORDERED, ADJUDGED, AND DECREED that Petitioner either in his individual capacity or that of Executor shall not occupy the premises as a residence; and it is further
ORDERED, ADJUDGED, AND DECREED that Ruth Powell shall not occupy the premises as a residence; and it is further
ORDERED, ADJUDGED, AND DECREED that Petitioner shall submit a warrant of eviction consistent with this Decision and Order for review and execution.
DATED: June 10, 2025HON. JONATHAN G. SCHOPFSARATOGA COUNTY SURROGATEENTEREDPapers Considered:
-December 29, 2022 Local Annual Order Fourth Judicial District - by Judicial Notice
-Petitioner's RPAPL Article 7 Petition and Notice of Commencement with Exhibits filed May 23, 2025
-Exhibit A (Letters Testamentary)
-Exhibit B (Ten Day Notice)
-Order filed May 29, 2025-Respondent's Memorandum of Law filed June 3, 2025
-Respondent's Affirmation with Exhibits filed June 5, 2025-Exhibit A (October 1, 2024 Coffinger Decision and Order)
-Exhibit B (Waiver of Process Tina Howansky)
-Exhibit C (Citation dated September 22, 2022
-Exhibit D (Amended Decree Granting Probate dated October 31, 2024)
-Exhibit E (Combined Oath and Designation)
-Exhibit F (Letters Testamentary dated October 31, 2024)
-Exhibit G (Notice of Petition and Petition for Eviction)
-Exhibit H (Partial map)
-Exhibit I (12.15.23 portion of testimony)
-Exhibit J (Portion of Objections)
-Exhibit K (Portion of Objections)
-Exhibit L (Portion of Objections)
-Exhibit M (Will)
-Petitioner's Trial Exhibit 1-Affidavits of Service (2) filed June 6, 2025
-Respondent's Trial Exhibit A-Respondent's Trial Exhibit C-Respondent's Trial Exhibit D
-Respondent's Trial Exhibit E-Respondent's written closing statement (Marked post-trial as Respondent's Exhibit F)Footnotes

Footnote 1:Per Respondent, decedent died on the 6th late in the evening. The official death date is the 7th.

Footnote 2:Timothy Howansky has a residence at 332 Eastline Road next to decedent's property but claims that he resides at 330 Eastline Road with his wife residing at 332. As brought out in testimony, the Petition lists Timothy Howansky's address as 332 Eastline Road. Timothy Howansky testified that this was an error or oversight and was not ever corrected, despite the Petition having been verified. The Court does not find his testimony credible on this issue.

Footnote 3:This Decision and Order was amended on June 5, 2025 to correct a typographical error in the date of the Decision's execution from March 27, 2024 to March 27, 2025.

Footnote 4:Now a Justice of the Supreme Court, Judge Kupferman's election to the Supreme Court with a term beginning in 2023 created the vacancy in the Surrogate's Court for the 2023 calendar year until the undersigned's election and assumption of the duties of Surrogate on January 1, 2024.

Footnote 5:Judiciary Law §184(1) and its progeny.

Footnote 6:A case involving the ability of the Chief Judge to cross-assign the then Hamilton County, County, Family, and Surrogate Judge.

Footnote 7:Subdivision "k" provides in pertinent part: "[a]fter the expiration of any temporary assignment, as provided in this section, the judge or justice assigned shall have all the powers, duties and jurisdiction of a judge or justice of the court to which he or she was assigned with respect to matters pending before him or her during the term of such temporary assignment. Thus, Judge Coffinger was empowered to issue her decision in 2024 after her temporary assignment terminated. For further discussion, see also, Matter of Marcus B., 95 AD3d 15 [1st Dep't. 2012].

Footnote 8:Respondent did not raise this issue in the underlying estate proceedings and participated in the same before Judge Coffinger willingly as a litigant. Thus, he ought to now be properly estopped from raising this issue.

Footnote 9:Ruth Powell, Respondent's sister was not a party to this proceeding and did not appear or testify.

Footnote 10:Much has been made in the underlying trial before Judge Coffinger and again at the summary proceeding for eviction of the fact that the Respondent signed various forms which were filed at the Town of Malta Assessor's office concerning the agriculture exemption that was granted to the real property. Petitioner accuses Respondent of lying on the forms since he signed them as "Executor" prior to Letters being issued. Respondent testified that he did so as he was the named executor in the will at the time the exemption papers were submitted. At issue also is the fact that no written lease apparently exists by and between Respondent, his father or the estate for the farming of the land, which would appear to be a prerequisite for the obtaining of the exemption at issue. The fact that Respondent signed the forms as "Executor" is of no moment. He testified credibly that he was the executor named in the will at the time the forms were signed, and his belief was based upon that. Regardless of the title used on the form, Respondent was a 1/3 owner by operation of law at the time the forms were signed, therefore he had the full right to submit the same, regardless of the title used, which surely resulted in a lower tax liability for the property and thus for the Estate. Whether or not the exemption was wrongfully procured is an issue for the Town of Malta to address and this Court is without jurisdiction to pass judgment on the same.

Footnote 11:There was no testimony in regard to what proceeds the Estate derived from this action.

Footnote 12:As long as the Executor is doing so in the best interests of the Estate and exercising proper business judgment as a fiduciary.